**UNITED STATES of America**

v.

**Marie BOWERS.**

**Crim. No. 78–222.**

United States District Court,
W. D. Pennsylvania.

July 9, 1981.

668

Michael Cauley, Asst. U. S. Atty., Pittsburgh, Pa., for plaintiff.

H. David Rothman, George Schumacher, Federal Public Defender, Pittsburgh, Pa., for defendant.

## OPINION

ZIEGLER, District Judge.

### I. *History of Case*

Marie Bowers was indicted by a grand jury for alleged violation of 29 U.S.C. §§ 439(c) and 501(c), and 18 U.S.C. § 2. The indictment was filed on September 25, 1978, and an arraignment was held on December 8, 1978. Charles F. Bowers, Jr., appeared as counsel for defendant[1] until he moved to withdraw due to a "potential conflict of interest" inasmuch as he would be required to be a witness at trial. That motion was granted on January 4, 1979. H. David Rothman, Esquire, entered an appearance on December 18, 1978, and filed a written waiver of defendant's right to a speedy trial pending her cooperation with the United States. The record was sealed on joint-motion of the parties due to the ongoing investigations.

On October 9, 1979, Attorney Rothman filed a motion to dismiss the indictment alleging ineffective assistance of counsel in that defendant was represented prior to indictment by counsel with a "clear conflict of interest" because he was acting on behalf of a third person, and further that Attorney Charles Bowers had failed to seek immunity from prosecution for defendant because counsel "was and is otherwise involved in obstructing justice in this case." Attorney Rothman seeks dismissal of the charges on the thesis that his client would not have been indicted, if Miss Bowers had been effectively represented prior to the initiation of adversary proceedings. We are urged to order dismissal to afford defendant the benefit of an offer allegedly made to her lawyer prior to indictment but never conveyed to the client.

On April 8, 1981, defendant entered a conditional plea of guilty to the first count thereby preserving the contentions raised in her motion to dismiss the indictment.[2] If the motion is granted, the indictment must be dismissed. If the motion is denied, the court has been urged to approve a plea bargain that limits the judgment of sentence to an unspecified period of probation based on defendant's cooperation with the government. On April 8, 1981, the court reserved decision on whether to accept the guilty plea pending receipt of evidence that such a sentence is fair and just, and consistent with the interests of justice. Of course, if the indictment is dismissed we need not reach that question.

### II. *Discussion*

The first question presented is whether the United States tendered an offer of immunity to counsel for Marie Bowers prior to her indictment. Defendant denies that counsel conveyed any offer to her. If the offer was made, we must examine its terms and conditions, and then decide whether defendant would have accepted those terms, assuming that the proposal had been conveyed to her. This inquiry is important because if defendant would have been unwilling to accept the terms and conditions prior to indictment, her post-indictment cooperation may be relevant to a just sentence but it may not serve as a predicate for dismissal.[3]

1. Charles F. Bowers, Jr., and Marie Bowers are not related.

2. A conditional plea of guilty enables a defendant to preserve pre-trial decisions of law which may preclude the possibility of a subsequent trial, or govern the evidence to be presented at trial. *United States v. Moskow*, 588 F.2d 882 (3d Cir. 1978); *United States v. Zudick*, 523 F.2d 848 (3d Cir. 1975).

3. Arguably, defendant's post-indictment cooperation may be some evidence of her willingness to accept the terms and conditions of a

The second question presented is whether, assuming the United States did not offer immunity prior to indictment, Attorney Bowers effectively represented his client prior to the initiation of adversary proceedings. This inquiry leads squarely to the allegations of conflict of interest, subornation of perjury and obstruction of justice set forth in the motion to dismiss. If this court finds that defendant has met her burden of proving that counsel was ineffective due to his failure to convey an offer of immunity, we need go no further. On the other hand, a finding of no offer of immunity compels consideration of the second question, namely, whether counsel was ineffective for corrupt reasons prior to the institution of adversary proceedings.

### III. *The Offer of Immunity*

 At the hearing on June 22, 1981, Thomas E. Crawford, Esquire, counsel for the United States when the indictment was returned, testified that he advised Attorney Charles Bowers that Marie Bowers would be granted "pocket" or informal immunity from prosecution in return for her cooperation with the government.[4] The offer was conveyed in the following language: "Does your client desire to be a witness or a defendant?" Cooperation included assistance in various ongoing investigations and defendant's willingness to testify at the trial of any person who was indicted based on evidence supplied by her. When counsel failed to respond on two occasions on or about March 2, 1978, the grand jury returned a two-count indictment against defendant.

The evidence of the offer is clear. The language is susceptible of one interpretation only, and the United States presented no evidence to the contrary. We have no reason to doubt the testimony of Mr. Crawford and, therefore, this court finds that the United States tendered an offer of immunity to counsel for Marie Bowers prior to the initiation of adversary proceedings.

grant of immunity prior to indictment, assuming that an offer by the United States had been conveyed to her.

This finding leads to the question of whether Attorney Bowers had a duty to convey the offer to his client. Relying on the transcript of the telephone conversation of April 24, 1979, *which was subsequent to her indictment*, the government seems to suggest that counsel had no duty to convey the offer because Miss Bowers was claiming innocence and did not desire to meet with Mr. Crawford.

The relevant portion begins at page 5:

"Lucky [Charles Bowers]: The only alternative when I represented you, the only alternative was, number one—Crawford said he wanted to talk with you. If you'd come clean, confess that you took the money, and that there are other people involved. At that time you told me you weren't involved in any crime. You weren't interested in talking with him. Right?

1790–4 [Marie Bowers]: What was that?

Lucky: You weren't involved in committing any crimes.

1790–4: Oh, right right. Okay.

Lucky: And you weren't interested in talking with him.

1790–4: Oh, okay."

The government's reliance on this conversation is misplaced. The conversation is ambivalent at best and it also occurred following the indictment when defendant was cooperating with the prosecutor. Her recorded statements were designed to elicit incriminating statements from Mr. Bowers and she was responding to his lead. Moreover, the transcript buttresses defendant's assertion that counsel had never told her of the specific proposal of Mr. Crawford.

Nowhere is immunity discussed. Nowhere is defendant reminded that she could have been a witness rather than a defendant. Nowhere is Miss Bowers refreshed that the United States was willing to forego prosecution in return for her cooperation. Instead, the recording indicates that

4. "Pocket" or informal immunity is a decision not to prosecute by the United States Attorney without the formal grant of statutory immunity set forth in 18 U.S.C. §§ 6002 and 6003.

counsel had told defendant that Mr. Crawford desired to meet with her to secure a confession!

The United States urges, however, that the dialogue is susceptible to an interpretation that Miss Bowers was claiming innocence and did not desire to discuss the matter with the prosecutor, thereby somehow obviating the duty to convey the offer to the client. We think not. First, Miss Bowers has testified that she would have accepted the offer if it had been conveyed to her; second, a complete reading of the transcript establishes that defendant never advised her lawyer that she was innocent; third, defendant admitted to her lawyer that she was guilty; and fourth, her lawyer knew that she was guilty.

Counsel was not confronted with a client who was proclaiming innocence and to whom immunity and cooperation would have been anathema.[5] Here counsel was representing a client against whom the evidence was overwhelming, who was seeking advice, and to whom Mr. Crawford's proposal may have been attractive. The duty to advise the client of the specific offer under these circumstances is basic.

The United States next relies upon a telephone conversation between defendant and a secretary for Charles Bowers on December 5, 1978. Donna Carter testified that Marie Bowers stated: "As far as she's concerned it's a not guilty plea and no deals with the U. S. Attorney's Office." This statement, the government urges, indicates that either Charles Bowers had conveyed the offer of immunity to defendant or no duty was created to convey the offer under the circumstances.

■ We reject the second proposition for the reasons which have been discussed. The duty to advise the client of all proposals by the prosecutor remains inviolate irrespective of the position taken by the client vis-a-vis the government. Such a duty is obvious where, as here, the evidence indicates that the client would have accepted the offer despite her protestations.

A more difficult question is presented, however, by the alleged statement as to whether Charles Bowers did in fact convey Mr. Crawford's proposal to Marie Bowers prior to indictment. First, we are confronted with defendant's testimony to the contrary. Second, the alleged communication does not specifically refer to an offer of immunity by the prosecutor. It mentions a "deal" but the only deal to defendant's knowledge was a plea of guilty and a confession, which is repeated by Attorney Bowers in the telephone conversation of April 24, 1979. Third, the taped conversation of April 24, 1979, does not indicate that Charles Bowers had conveyed or defendant was aware of any immunity offer by the United States. Fourth, neither the taped conversations of January 14 nor April 16, 1979, corroborate the position that Charles Bowers advised defendant of Mr. Crawford's proposal prior to indictment. Indeed, they tend to corroborate defendant's testimony. And finally, the critical witness for the government did not testify at this hearing. As a result, we hold that defendant has sustained her burden of proof with respect to the failure of counsel to convey the offer of immunity to her prior to indictment.

## IV. Terms and Conditions

The evidence establishes that the United States desired the cooperation of defendant in the investigation of others in alleged criminal conduct. The government apparently believed that Miss Bowers was able to supply that assistance. Mr. Crawford testified that cooperation included meetings with suspects, telephone conversations, Nagra recordings and a willingness to testify truthfully at trial.

The record indicates that defendant has assisted the government in all respects following the indictment. She is willing to testify at trial concerning her role, and the role of others in various activities. The

---

**5.** In our judgment, counsel must inform the client of an offer of immunity by the prosecutor even under this hypothesis.

government does not abjure. Indeed, the Assistant United States Attorney currently conducting the investigations has conceded that Miss Bowers has performed all acts requested of her.

Finally, Miss Bowers has testified that she would have been willing to comply with any investigative request prior to trial. Her cooperation following the indictment is corroborative of this assertion. Thus, we have no reason to doubt the veracity of defendant's evidence since the United States does not seriously contest this evidence. Indeed, this court has invited the United States to present evidence to the contrary but no such evidence is of record. We hold that Marie Bowers was able and willing to cooperate with the United States in all relevant investigative endeavors assuming that the offer of immunity had been conveyed to her.

### V. *The Duty of Counsel*

■ The American Bar Association Standards provide that a "lawyer has a duty to keep his client informed of the developments in the case and the progress of preparing the defense." *A.B.A. Standards Relating to The Prosecution and The Defense Function,* § 3.8, p. 222 (Tentative Draft 1971). The lawyer-client relationship encompasses at the very least an effective advocate and an informed client who is cognizant of all proposals made by the prosecutor. *Id.* at § 6.2(a), p. 249. Pre-indict-

ment proposals are no exception. Hence, a lawyer who fails to convey to his client a proposal which may enable the client to avoid the burden of an indictment violates the fundamental duty of undivided loyalty to his client.[6]

■ The ineffectiveness of counsel may also raise serious constitutional questions. The Sixth Amendment right to the assistance of counsel includes the right to be assisted by competent counsel. If counsel fails to inform his client of a pending proposal, prior to adversary criminal proceedings, and the client is prejudiced, fairness and due process dictate relief. We are satisfied that Marie Bowers was constitutionally prejudiced by the acts of her counsel and we must fashion the relief which justice requires.[7]

■ The dismissal of an indictment is a drastic remedy. *United States v. Morrison,* 449 U.S. 361, 367, 101 S.Ct. 665, 669, 66 L.Ed.2d 564 (1981). But these facts call for a drastic remedy. We cannot suppress the evidence. *Gilbert v. California,* 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967); *Massiah v. United States,* 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964). We cannot grant a new trial. *O'Brien v. United States,* 386 U.S. 345, 87 S.Ct. 1158, 18 L.Ed.2d 94 (1967); *Black v. United States,* 385 U.S. 26, 87 S.Ct. 190, 17 L.Ed.2d 26 (1966). The error is not harmless. *Chap-*

---

**6.** *See also,* ABA Code of Professional Responsibility DR 5–101, 5–105, 5–107, 6–101, 7–101 and 7–102; Section EC 7–8 of the Code of Responsibility of the Pennsylvania Supreme Court provides as follows:

A lawyer should exert his best efforts to insure that decisions of his client are made only after the client has been informed of relevant considerations. A lawyer ought to initiate this decision-making process if the client does not do so. Advice of a lawyer to his client need not be confined to purely legal considerations. A lawyer should advise his client of the possible effect of each legal alternative. A lawyer should bring to bear upon this decision-making process the fullness of his experience as well as his objective viewpoint. In assisting his client to reach a proper decision, it is often desirable for a lawyer to point out those factors which may lead to a decision that is morally just as well

as legally permissible. He may emphasize the possibility of harsh consequences that might result from assertion of legally permissible positions. In the final analysis, however, the lawyer should always remember that the decision whether to forego legally available objectives or methods because of non-legal factors is ultimately for the client and not for himself. In the event that the client in a non-adjudicatory matter insists upon a course of conduct that is contrary to the judgment and advice of the lawyer but not prohibited by Disciplinary Rules, the lawyer may withdraw from the employment. 42 Pa.Cons.Stat.Ann. EC 7–8 (Purdon's 1975).

**7.** Without doubt defense counsel failed in "the exercise of the customary skill and knowledge which normally prevails at the time and place." *Moore v. United States,* 432 F.2d 730, 736 (3d Cir. 1970).

*man v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). This is a case of substantial and continuing prejudice to a defendant who would not otherwise have been indicted. There can be but one remedy and that is to return the parties to their original position by dismissing the indictment.

The Supreme Court has instructed the district courts to weigh carefully the right to counsel in a criminal case with the necessity for preserving society's interest in the administration of criminal justice. *United States v. Morrison,* — U.S. —, —, 101 S.Ct. 665, 668, 66 L.Ed.2d 564 (1981). "Cases involving Sixth Amendment deprivations are subject to the general rule that remedies should be tailored to the injury suffered from the constitutional violation and should not unnecessarily infringe on competing interests." *Id.* This court is confident that the remedy we fashion today does not unnecessarily infringe upon society's interest in the administration of criminal justice.

■ The United States intended to investigate and perhaps prosecute certain individuals by granting immunity to Marie Bowers. The decision to grant immunity to certain persons and prosecute others is clearly within the prerogative of the executive branch of government. Grants of immunity are commonplace and our decision to dismiss this indictment places the United States in precisely the same position it willingly assumed at the outset of these investigations.

Whether these investigations produce an indictment is immaterial. The prosecutor saw fit to grant immunity to a person involved in criminal activity in order to investigate other persons suspected of illegal activities. Whether that decision was sound is not for this court to decide. Our role is limited to a determination that such a proposal was made and, under these circumstances, to enforce it.

■ We have determined to dismiss the indictment without prejudice. We do so because the grant of immunity was conditioned upon the requirement that Marie Bowers appear and testify at any subsequent trial. That condition remains unfulfilled. If she fails to comply with the final condition of the proposal, the United States may proceed against her in any lawful matter.[8]

Finally, since our decision to dismiss the indictment is predicated upon a finding that counsel was ineffective for failing to convey to Miss Bowers the offer of immunity, we need not address the remaining allegations of the motion to dismiss.[9] The motion of Marie Bowers to dismiss the indictment will be granted.

---

**8.** The fact that the statute of limitations may bar reprosecution of defendant for these crimes cannot serve as a predicate to deny the relief requested because the United States is in precisely the same position that would have obtained if no indictment had been returned.

**9.** A copy of this opinion will be delivered to the Disciplinary Board of the Supreme Court of Pennsylvania because the motion and testimony of record contain serious allegations of impropriety concerning a member of the bar of this court.