STATE of Wisconsin, Plaintiff-Respondent,

v.

Billie S. LUDWIG, Defendant-Appellant-Petitioner.

Supreme Court

*No. 83–1938–CR. Argued May 29, 1985.—*
*Decided June 28, 1985.*

(Also reported in 369 N.W.2d 722.)

For the defendant-appellant-petitioner there were briefs and oral argument by *Richard D. Martin,* assistant state public defender.

For the plaintiff-respondent the cause was argued by *Mary Batt,* assistant attorney general, with whom on the brief was *Bronson C. La Follette,* attorney general.

DAY, J.   This is a review of an unpublished decision of the court of appeals affirming a decision of the circuit court for Kenosha county, Honorable Robert V. Baker, circuit judge. The circuit court's decision denied the motion for postconviction relief of the defendant, Billie S. Ludwig (Defendant). The issue on review is: Was the Defendant denied her right to effective assistance of counsel under the United States and Wisconsin Constitutions by the failure of her attorney to inform her of a plea offer in a manner which made clear that she, and not the attorney, had the right to accept or reject the offer?

We conclude, under the circumstances of this case, that the Defendant was denied her right to effective assistance of counsel under the sixth amendment to the United States Constitution. It is not necessary to reach the issue under our state constitution. We, therefore, reverse the decision of the court of appeals affirming the denial of the Defendant's motion, vacate the judgment of conviction and remand the case for a new trial.

The Defendant was employed at the Sportsman's Bar in Paddock Lake, Wisconsin, where she worked primarily as a bartender and cook. On the night of February 19, 1982, she remained at the Sportsman's Bar to socialize after getting off work. That night, around midnight, the bartender ejected Ross Talbert and another man.

When Talbert returned a short time later, he was escorted out by Joe Mack, a bar patron. A fight ensued between Mack and Talbert in the parking lot and street. Mack returned to the bar and placed the knife he had wielded in the fight on the bar. The Defendant put the knife in her pocket.

When police arrived that night, the Defendant disclaimed knowledge of the fight and did not mention or give the knife to police. It is undisputed that the Defendant did not witness the fight. The morning after the incident, sheriff's deputies returned to the Sportsman's Bar where they confronted the Defendant with Mr. Mack's statement that she possessed the knife used in the fight. The Defendant took the deputies to her home and gave them the knife. For this conduct, the Defendant was charged with aiding a felon in violation of sec. 946.47 (1) (b), Stats. 1981–1982.[1]

She was tried on the charge and, on October 19, 1982, a jury returned a verdict of guilty.

On November 18, 1982, the Defendant filed a postconviction motion alleging several grounds for a new trial. Among the grounds stated were insufficiency of the evidence and that a new trial was required in the interest of justice. On November 19, 1982, that motion was denied, a judgment of conviction was entered and the De-

---

[1] "**946.47  Harboring or aiding felons.**  (1) Whoever does either of the following is guilty of a Class E felony: . . .

"(b) With intent to prevent the apprehension, prosecution or conviction of a felon, destroys, alters, hides, or disguises physical evidence or places false evidence."

fendant was sentenced to pay a fine of $150 and ordered to perform forty hours of community service.

On July 28, 1983, the Defendant filed another postconviction motion. This motion alleged that the Defendant was denied her state and federal constitutional rights to effective assistance of counsel. A hearing on this motion was held on August 16, 1983. On September 21, 1983, the circuit court filed its decision denying the motion.

The Defendant appealed and on May 18, 1984, the court of appeals filed its decision remanding the case for findings of fact. On May 23, 1984, the circuit court filed its findings of fact. Subsequently, in a decision filed September 12, 1984, the court of appeals affirmed the circuit court's order denying the postconviction motions made on the grounds of insufficiency of the evidence and ineffectiveness of counsel.

This court granted review limited to the issue of whether the Defendant was denied her right to effective assistance of counsel. We conclude that she was.

At the August 16, 1983, postconviction motion hearing, Assistant District Attorney William Koos, who prosecuted the Defendant in her trial, testified that on the morning of the first day of the Defendant's trial he communicated a plea offer to the Defendant's attorney. The terms of the offer were that if the Defendant would plead no contest or guilty to two unspecified misdemeanor counts, he would dismiss the pending felony count. Mr. Koos, although not sure of the exact words used by the Defendant's attorney, testified that her attorney "rejected the offer immediately. . . ."

The Defendant's attorney testified that he had replied that he "didn't think so" to the plea offer made by Mr. Koos. He also testified that he talked to the Defendant about the offer prior to going into the afternoon session of the trial or during the recess in the afternoon session. When asked if he specifically asked the Defendant

whether or not she wanted to accept the offer her attorney testified as follows:

"A. I indicated to her my recommendation was we reject it. We had a good panel and go forward, and that was my advice to her and she indicated okay, and that is what we did.

"Q. Did you specifically ask—if I may repeat the question—whether or not she wanted to accept the offer?

"A. I don't think I phrased the question in that fashion. I gave her at that time in the context of all our discussions somevery [sic] pointed advise [sic], and that was we should go forward with the trial, and she acknowledged that is what we should do."

The Defendant testified that prior to trial she informed her attorney that she did not want to be convicted of a felony and that she would take anything but a felony. The Defendant testified that she told her attorney that she did not want to be convicted of a felony because it would result in the loss of her bartender's license.

The Defendant testified that the first and only time she heard about the offer was after the first day of trial outside of her attorney's office. According to the Defendant, she was upset and her attorney told her that the state wanted to settle for two misdemeanors and if they were that unsure of themselves, he was going all the way. She testified that her attorney then patted her on the shoulder and left. When asked if her attorney ever asked her if she wanted to accept the offer that the state had made, she answered, "No, he never mentioned it." The Defendant testified that she thought she could not accept the offer because her attorney had already rejected it. She further testified that if she had been given the option to accept the offer at that time, she would have accepted it.

The Defendant testified that on the night of the first day of trial, after the discussion with her attorney, she

and her husband went to a tavern at Paddock Lake. She testified that several people there told her that she had the right to accept the misdemeanors offer and that her attorney should not reject them for her. She said that she and her husband left the tavern agreeing that she had the right to settle for the two misdemeanors, but that she thought it was no longer possible to accept the offer because her attorney told Mr. Koos they "were going all the way."

No mention was ever made of the offer on the second day of trial by the Defendant or her attorney.

The testimony of the Defendant was corroborated by the testimony of her husband who was with her throughout the trial.

It is undisputed that the Defendant had no prior criminal record and had no prior arrests.

Upon remand from the court of appeals, the circut court made the following findings of fact:

"1. A plea negotiation offer was made by Prosecutor William Koos to [the Defendant's attorney] on the first day of the jury trial, just after the jury was selected in the Kenosha County Courthouse, which would be close to noon, of that day.

"2. The offer by the prosecutor to the defense attorney was that the District Attorney's office would be willing to drop the felony count for a plea to two unspecified misdemeanors.

"3. The defendant's husband was with the defendant at all times during the trial.

"4. The offer was conveyed to the client in the afternoon of the first day of trial. This Court cannot find beyond a reasonable doubt or by clear and convincing evidence that this offer was conveyed in such a manner by [the Defendant's attorney] to his client that the client was clearly notified that it was her choice to either accept, or reject, the offer, at the time [the Defendant's attorney] and his client departed for home, that first day of trial.

"4. [sic] The Court will find that [the Defendant's attorney's] advice to his client regarding the offer was to reject it, and proceed on with the trial.

"5. That the client during the recess, between the first and second day of trial, learned, albeit from an extraneous source, that she could accept the offer of two misdemeanors.

"6. That at, or before, the commencement of the second day of trial, or during the remainder of the trial, the offer was not brought up by either [the Defendant's attorney] or his client, or the client's husband.

"7. Therefore, the Court cannot find that the offer was verbally rejected by her.

"8. That her, and her husband's lack of inquiry, to her attorney, regarding the offer, prior to the commencement of the second day of trial was tantamount to her rejection of the offer."

The sixth amendment to the United States Constitution provides:

"In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence."

The United States Supreme Court has recognized that due to the vital role counsel plays to ensure that a trial is fair, "the right to counsel is the right to the effective assistance of counsel." *McMann v. Richardson*, 397 U.S. 759, 771, n. 14 (1970). Whether counsel's assistance was ineffective is a mixed question of law and fact. *Strickland v. Washington*, —— U.S. ——, 104 S. Ct. 2052, 2070 (1984). The trial court's determinations of what the parties did, or did not do, and the basis for the attorney's

challenged conduct are factual and will ordinarily be upheld unless they are against the great weight and clear preponderance of the evidence. *State v. Felton,* 110 Wis. 2d 485, 504, 329 N.W.2d 161 (1983). "The ultimate conclusion of whether the attorney's conduct resulted in a violation of the right to effective assistance of counsel is a question of law," and deference to the trial court's determination is not appropriate. *Felton,* 110 Wis. 2d at 505. Since, in this case, this court's decision is based upon the facts as found by the trial court and the undisputed facts, deference to the trial court's determination is not given.

In *Strickland,* —— U.S. ——, 104 S. Ct. at 2062, the United States Supreme Court for the first time fully and directly addressed a sixth amendment claim of "actual ineffectiveness" of counsel's assistance outside the area of conflict of interest. In so doing, the Court said: "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland,* —— U.S. ——, 104 S. Ct. at 2064.

In *Strickland,* the Supreme Court set up the following two tests which defendants must pass to obtain reversal of a conviction upon grounds of ineffective assistance of counsel:

"First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the re-

sult unreliable." *Strickland,* —— U.S. ——, 104 S. Ct. at 2064.

The Court also gave the following caveat:

"Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. (Cite omitted). A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight. . . ." *Strickland,* —— U.S. ——, 104 S. Ct. at 2065.

In the instant case, neither the circuit court nor the court of appeals addressed the applicability of *Strickland.* Both courts, however, agreed that while the Defendant's attorney's communication of the plea offer to her left something to be desired, the Defendant had a burden, under the circumstances of the case, to pursue the plea offer with her attorney.

The court of appeals concluded that the failure of the Defendant's attorney to clearly notify the Defendant of her options with respect to the plea offer was "not in keeping with the requisites of effective assistance of counsel." The court of appeals, however, affirmed the circuit court decision concluding that the Defendant was not prejudiced by her attorney's failings.

The state's contention in this case is similar to the holding of the court of appeals with the exception that the state relies upon the two tests of *Strickland.* Applying the *Strickland* tests, the state concedes that the performance of the Defendant's attorney was deficient due to his failure to make clear to the Defendant that the choice to accept, or reject, the plea offer was hers. Therefore, under *Strickland,* he "made errors so serious that counsel was not functioning as the 'counsel' guaran-

teed the defendant by the Sixth Amendment." *Strickland*, —— U.S. ——, 104 S. Ct. at 2064. The state, however, contends that the Defendant was not prejudiced by the deficient performance.

In *Strickland*, the Supreme Court set out the test for determining prejudice. In so doing the Court rejected several alternative formulations of tests for prejudice. The Court said that "[i]t is not enough for the Defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Strickland*, —— U.S. ——, 104 S. Ct. at 2067. The Court also rejected what it considered too strict a test when it said "that a defendant need not show that counsel's deficient conduct more likely than not altered the outcome in the case." *Strickland*, —— U.S. ——, 104 S. Ct. at 2068. The Court instead settled on the following test of prejudice:

"The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, —— U.S. ——, 104 S. Ct. at 2068.

The state argues, and the court of appeals agreed, that the Defendant's failure to pursue the matter of the plea offer with her attorney after he had conveyed that offer to her was the result of her implicit acquiescence in his decision to reject the offer.[2] Therefore, they conclude there was no prejudice. The state focuses upon the fact that the Defendant had previously contemplated the plea bargain process when she and her attorney attempted to plead to an ordinance violation and one misdemeanor

---

[2] The following finding, labelled by the circuit court as a finding of fact, is really a conclusion of law: "8. That her, and her husband's lack of inquiry, to her attorney, regarding the offer, prior to the commencement of the second day of trial was tantamount to her rejection of the offer."

count prior to trial. The state also focused upon the advice concerning the plea which the Defendant received from friends at the bar following the first day of trial. From this the court of appeals apparently concluded, and the state argues, that the Defendant had obtained sufficient knowledge of the plea bargaining process that, had she been desirous of accepting the plea offer, she would have questioned her attorney concerning it. We disagree.

It is undisputed that the Defendant had no prior arrests, convictions or exposure to the criminal justice system. While it is clear that a defendant generally is dependent upon the attorney to effectively inform the defendant of the legal options and ramifications of those options, the dependence is peculiarly strong when the defendant is a novice to the criminal justice system. Such a defendant could hardly be expected to know, absent advice from counsel, that the defendant, and not the attorney possessed the right to accept a plea bargain proposal.

To place on the Defendant in this case the burden of questioning her attorney concerning the offer based upon her feelings after barroom chitchat, is to ignore her substantial dependence upon her attorney to inform her of what she needs to know. Since there is nothing in the record to show that anyone with legal expertise advised her in the tavern, we conclude that such a burden is unreasonable.

Furthermore, little can be taken from the fact that earlier in the proceedings the Defendant had agreed to make plea offers to the state. There is nothing in the record that indicates that she had any previous offers from the state so there was no other opportunity for the question of acceptance to arise.

When the plea offer was first conveyed to the Defendant's attorney, he immediately rejected it without prior consultation with the Defendant and in total disregard of the principle that the decision of what plea to enter "is

uniquely one that should be the client's, not the lawyer's." *Felton,* 110 Wis. 2d at 514. When he communicated the offer to the Defendant, he failed to clearly inform her that the decision of whether to accept or reject the offer was hers. In so doing, he effectively deprived the Defendant of any opportunity to accept the offer.

Given the Defendant was deprived of an opportunity to accept the plea offer, simple disclosure of the terms of that offer to the Defendant is of little value. This case, therefore, becomes analogous to one in which the offer is not communicated to the Defendant at all. In *United States ex rel. Caruso v. Zelinsky,* 689 F.2d 435, 438 (3rd Cir. 1982), the Third Circuit Court said:

"The decision to reject a plea bargain offer and plead not guilty is a decision for the accused to make. It would seem that, in the ordinary case, a failure of counsel to advise his client of a plea bargain would constitute a gross deviation from accepted professional standards."

We conclude, under the circumstances of this case, that there was a reasonable probability that if the Defendant's attorney had properly informed the Defendant that it was her right to accept the plea offer, she would have accepted the offer and avoided the felony trial and conviction.

In this case, although the Defendant has continued to claim her innocence to the felony charge, she did not dispute the conduct alleged by the state. She was even willing to accept legal sanction for that conduct as is established by her willingness to plead guilty to a misdemeanor count. In *United States v. Bowers,* 517 F. Supp. 666, 671 (W.D. Pa. 1981), the Court found that the defendant had been denied effective assistance of counsel due to her attorney's failure to communicate an offer of immunity to her. In so holding, the Court said:

"Counsel was not confronted with a client who was proclaiming innocence and to whom immunity and coop-

eration would have been anathema. Here counsel was representing a client against whom the evidence was overwhelming, who was seeking advice, and to whom Mr. Crawford's proposal may have been attractive. The duty to advise the client of the specific offer under these circumstances is basic." *Bowers,* 517 F. Supp. at 670.

While the evidence in this case as a basis for a felony conviction was not overwhelming, the Defendant's admission to the conduct alleged by the state and her willingness to accept a sanction for that conduct would demonstrate that the offer may have been attractive.

Furthermore, there would be a strong incentive to avoid even the possibility of a felony conviction. The stigma and loss of rights attached to being a convicted felon are substantial. In this case, as the Defendant testified, that incentive was strengthened further by the fact that the Defendant would lose her bartender's license as the result of a felony conviction.[3] Bartending was a substantial part of the duties which the Defendant performed at the Sportsman's Bar.

A review of all the circumstances leads us to the conclusion that the Defendant has met her burden and shown that she was prejudiced by her counsel's failings and was denied her sixth amendment right to effective assistance of counsel. Therefore, it is unnecessary to reach issues based upon our state constitution.

*By the Court.*—The decision of the court of appeals and the decision of the circuit court denying the Defendant's motion for postconviction relief are reversed. The judgment of conviction is vacated and the cause is remanded for a new trial.

---

[3] Section 125.04, Stats. 1981–1982 provides in pertinent part:

"125.04   **General licensing requirements.** . . .

"(5) QUALIFICATIONS FOR LICENSES AND PERMITS. . . . (b) *Criminal offenders.* No license or permit related to alcohol beverages may, subject to ss. 111.321, 111.322 and 111.335, be issued under this chapter to any natural person who has habitually been a law offender or has been convicted of a felony unless the person has been duly pardoned."