COURT OF APPEALS
DECISION
DATED AND FILED

January 28, 2026

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2024AP2498-CR**

**STATE OF WISCONSIN**

Cir. Ct. No. 2020CF624

**IN COURT OF APPEALS
DISTRICT II**

---

STATE OF WISCONSIN,

    PLAINTIFF-RESPONDENT,

V.

SCOTT P. WOODS,

    DEFENDANT-APPELLANT.

---

APPEAL from a judgment and an order of the circuit court for Kenosha County: GERAD T. DOUGVILLO, Judge. *Reversed and cause remanded for further proceedings.*

Before Neubauer, P.J., Grogan, and Lazar, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Defendant-Appellant Scott P. Woods appeals from the judgment of conviction and the order denying postconviction relief based on ineffective assistance of counsel. We reverse the order denying postconviction relief and remand the cause for a *Machner*[1] hearing.

¶2 Woods was charged in four different cases involving eleven felony counts of stalking and bail jumping. The first case arose in June 2020, when Rachel[2] reported to law enforcement that Woods had been stalking her since she met him about five to six years earlier. Woods admitted that he drove past Rachel's residence regularly, watched her through binoculars, spoke to her neighbors about her, and made multiple social media accounts in order to contact her and evade her blocking him. Woods was charged with one count of felony stalking.

¶3 In December 2021, Woods signed a plea questionnaire/waiver of rights form, indicating that he intended to plead guilty to the stalking count as well as a felony bail-jumping count arising from a second case against him. That same day, Woods and the State signed a Stipulated Hold Open Agreement, whereby the State agreed to defer prosecution for 36 months in exchange for Woods's plea to both counts, and, if Woods complied with the terms of the agreement, at the end of the 36-month period, the State would dismiss the felony bail-jumping charge that he had pled guilty to; recommend probation on the stalking charge he had pled guilty to; and, after holding them open and pending during the 36-month period, dismiss

---

[1] *State v. Machner*, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979). While Woods appeals from both a judgment and an order, we address only the order for the reasons set forth in the opinion.

[2] Pursuant to the policy in WIS. STAT. RULE 809.19(1)(g) (2023-24), the victim is identified by a pseudonym. All references to the Wisconsin Statutes are to the 2023-24 version.

another stalking charge and felony bail-jumping charges against him in a third case. At a December 9, 2021 hearing,[3] Woods's counsel Toni Young stated she had gone over the deferred prosecution agreement with Woods, and Woods told the trial court that he understood the agreement. Discussion ensued about Woods's multiple cases, and the court continued the hearing until January 10, 2022 because it said that a fourth case against Woods, for which there was confusion as to whether it was open or closed, was not adequately covered in the deferred prosecution agreement.

¶4 At the continued hearing on January 10, 2022, Young moved to withdraw as counsel at Woods's request because he wanted to retain a private attorney, and the trial court adjourned the hearing until January 31, 2022. The court did not allow Young to withdraw as counsel at the January 31, 2022 hearing because Woods had not yet retained a private attorney. The court set the trial date for April 2022.

¶5 At jury selection in April 2022, the trial court granted the State's motion to consolidate Woods's four cases for trial over Woods's objection. The court inquired, pursuant to *Ludwig*,[4] about the outstanding plea agreement related to the Stipulated Open Hold Agreement. The State explained its terms, as detailed above, but also indicated that the fourth case against him would also be dismissed if Woods successfully complied with the agreement. Young asked the court to "not *Ludwig* Mr. Woods" because of his mental health issues (including anxiety), which she thought would cause him to "change his mind at some point and want to take the offer that the State has made." The court responded,

---

[3] The Honorable Bruce E. Schroeder presiding.

[4] *State v. Ludwig*, 124 Wis. 2d 600, 369 N.W.2d 722 (1985).

[w]ait a minute. I would definitely be reversed on this record. I'd get reversed if I did not *Ludwig* him on the basis that he might accept the deal. That's why we do the *Ludwig* hearing, is to make sure he is making the decision, not the lawyer.

….

… [I]f there is an offer on the table, it needs to be recorded as to what this offer is, and then he has to make his own decision, and that's the law.

¶6 The trial court next addressed Woods explaining that "[a] decision about whether to accept or reject any plea offer is for you to do on your own. You certainly should listen carefully to any advice that your lawyer gives you, but the final decision … is yours and yours alone[.]" Young told the court that she "did discuss the offer with … Woods in great detail on several different occasions.… We went through it, his deferred prosecution as well as the criminal complaint, as well as … maximum penalties." Upon inquiry by the court, Woods replied, "I am here today going to trial. That has been my decision." The court went on to explain each charge and their respective penalties, "[j]ust to make the record complete," and stated that, "[s]entences can be imposed consecutively[.]" The court explained that the State's offer would "strike off some of the counts[,]" and explained the terms, which would mean that "the only surviving charge after the 36 months if [Woods] correctly completed the agreement would be the stalking charge, and the [State] would be bound to recommend probation."

¶7 Woods equivocated as he explained to the trial court that he recalled that he had an agreement where "it would be on the basis of a lesser charge like a misdemeanor[,]" and that he "was going to accept that" as he was "assuming it was going to be that misdemeanor agreement." The court responded that its "impression … is … you don't want to plead guilty to the stalking; is that correct?" to which Woods responded affirmatively. Young next explained that Woods's previous

counsel had "talk[ed] to [Woods] about a misdemeanor [deferred prosecution agreement] … that was [offered] prior to him receiving the [second] stalking charge[,]" and which was "no longer available to … Woods." Woods told the court that he did not agree that he "had enough time to talk with [his] lawyer about this[.]" Woods explained that there was discovery that he had not seen, which he believed would be important to his defense. Young confirmed that there was some discovery of email messages on a disk which she was not able to open, and which the State confirmed it could not open, either, which the court conceded "may … be exculpatory." The case was thus set for another pretrial and trial date. Prior to the end of the hearing, the State asked, "did we finish the *Ludwig*[,]" and the court responded it, "[did not] know how [it could] do a *Ludwig* when [Woods] says he is in doubt about what the evidence is." At the hearing's conclusion, the court allowed Young to withdraw as counsel.

¶8　　At an August 2022 status conference,[5] Xavier Solis appeared as Woods's newly appointed counsel. He requested that the trial be adjourned to a later date so that he would have more time to discuss the case with Woods. With respect to the deferred prosecution agreement, he said he "would also like to have further discussions [of] the offer with … Woods." The trial was set for November 2022.

¶9　　At the November 22, 2022 jury status hearing, the new trial court inquired, "[w]as there a *Ludwig* hearing that was done previously…?" The State responded affirmatively, citing the April 2022 hearing. Solis told the court that he and Woods "had a breakdown in communication." Woods stated that he and Solis

---

[5] The Honorable Gerad T. Dougvillo now presiding for this hearing and all further court proceedings.

"have never had an appointment … to talk about the case." There was no discussion of the deferred prosecution agreement. The court said, "[w]e are going to go forward with trial next week absent some plea agreement[.]" On November 29, 2024, the matter was to proceed to trial. Instead, on that day, Woods signed a plea questionnaire/waiver of rights form indicating he intended to plead guilty to two counts of stalking and nine counts of felony bail jumping. Woods entered his guilty pleas; the court accepted them and found Woods guilty of all eleven counts. The court sentenced Woods on six of the counts to consecutive sentences totaling ten years of initial confinement and ten years of extended supervision, and on the other five counts to a consecutive four years of probation.

¶10    In his postconviction motion, Woods requested a *Machner* hearing or in the alternative requested an order to vacate his conviction and a new trial. He alleged that there was no completed *Ludwig* hearing in April 2022 because he had asked for more time to discuss the deferred prosecution agreement with his counsel. Woods alleged that after Solis was appointed as his counsel, Solis did not discuss the agreement with him. He argued that he "was not given the opportunity to either accept or reject the offer, which is tantamount to no offer communicated at all." He also alleged that Solis's performance was deficient for failing in his "duty to determine both whether a *Ludwig* hearing had been held, and to convey Woods'[s] decision regarding the plea bargain he had been given." Woods alleged this caused him prejudice because "the plea bargain would have resulted in a lesser sentence." Accordingly, Woods requested a *Machner* hearing or an order vacating his conviction and a new trial, "at which time … Woods would accept the stipulated hold open agreement[.]" At the motion hearing, the trial court agreed with the State that "the *Ludwig* was sufficiently complete[,]" stating that what held up the *Ludwig* hearing was "that discovery piece" that it said "ended up being duplicative [anyway]

of what was already in the discovery[.]"[6]  The court further found that Solis's performance was not deficient, and denied the motion.  Woods timely appealed.

¶11    On appeal, Woods contends that the trial court erred when it failed to conduct a *Machner* hearing on his ineffective assistance of counsel claims.  He also argues that the court erroneously exercised its discretion when it failed to allow him to withdraw his plea, because, as he alleges, there was a clear violation of *Ludwig*.  Whether *Ludwig* was violated turns on the question of ineffective assistance of counsel.  Thus, the question before this court is whether Woods is entitled to a *Machner* hearing to determine whether the facts support his ineffective assistance of counsel claim.

¶12    For a successful ineffective assistance of counsel claim, a defendant must show both that his counsel performed deficiently and that he suffered prejudice because of it.  *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  "To prove deficient performance, a defendant must show specific acts or omissions of counsel that were 'outside the wide range of professionally competent assistance.'"  *State v. Nielsen*, 2001 WI App 192, ¶12, 247 Wis. 2d 466, 634 N.W.2d 325 (citations omitted).  "To demonstrate prejudice, a defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.*, ¶13.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id.*  Whether counsel rendered ineffective counsel is a mixed question of fact and law.  *Id.*, ¶14.  A trial court's findings of fact are upheld unless clearly erroneous.  *Id.*  We review

_____

[6] The State explained to the postconviction court that the disk in question "was duplicative in discovery anyway [in] that [it] was attainable through the cellphone download, which [in] my understanding no parties ever had a problem accessing and going through the cellphone download in its entirety."

7

de novo whether the facts satisfy either the deficiency or the prejudice prong of the ineffective assistance of counsel analysis. *Id.*

¶13  "When a [trial] court summarily denies a postconviction motion alleging ineffective assistance of counsel without holding a *Machner* hearing," we review "whether the defendant's motion alleged sufficient facts entitling him to a hearing." *State v. Sholar*, 2018 WI 53, ¶51, 381 Wis. 2d 560, 912 N.W.2d 89. Whether the defendant's motion meets this standard is a question of law we also review de novo. *State v. Allen*, 2004 WI 106, ¶9, 274 Wis. 2d 568, 682 N.W.2d 433. If the motion raises sufficient facts to entitle the defendant to relief, then he is entitled to an evidentiary hearing. *Id.* If the motion presents only conclusionary allegations, or if the record conclusively demonstrates the defendant is not entitled to relief, the court has the discretion to deny the defendant's motion without a hearing. *Id.* Failure of a defendant's attorney to clearly notify the defendant of his or her options with respect to a plea offer may rise to the level of ineffective assistance of counsel. *State v. Ludwig*, 124 Wis. 2d 600, 610-11, 369 N.W.2d 722 (1985).

¶14  Woods's motion states that at the April 2022 hearing, he "indicated on the record that he needed a clearer understanding of the agreement, and also needed more time to talk to his counsel … regarding the agreement." The Record supports this. When Woods equivocated at the April 2022 hearing on his decision to go to trial, he expressed that he thought the State had offered him an agreement that reduced his charge to a misdemeanor, which was what he was prepared to accept. He stated that he felt that he did not have enough time to discuss the deferred prosecution agreement with Young, his counsel at the time, and that he did not want to plead guilty to felony stalking. He said he wanted to review discovery that he thought would be important to his defense, which had not yet been reviewed because

of a faulty disk. The trial court ended the hearing by stating that it did not know how the *Ludwig* hearing *could* be completed given Woods's doubt about the evidence that Woods felt might be exculpatory.

¶15    We conclude that Woods's motion raises sufficient facts that entitle him to a *Machner* hearing. He sufficiently alleges that the *Ludwig* hearing was not completed at the April 2022 hearing, and that Woods's counsel failed to determine that the *Ludwig* hearing had not been completed when Woods entered his guilty pleas, which, if true, ultimately denied Woods of the opportunity to accept or reject the deferred prosecution offer. *See Ludwig*, 124 Wis. 2d at 611.

¶16    The postconviction court was mistaken to conclude that the issue "wasn't that the *Ludwig* [hearing] was incomplete. It was the question of whether or not th[e] discovery … may have been duplicated in other parts of the file." The Record does not support this contention because there was no discussion as to whether the faulty disk was duplicative; the discussion revolved around what evidence might be revealed on the disk and whether it could be exculpatory.

¶17    Moreover, the Record shows that after the April 2022 hearing, the trial court did not revisit the deferred prosecution agreement to hear from Woods whether he accepted the offer. At the August 2022 status conference, Woods's newly-appointed counsel, Solis stated that he wanted to further discuss the deferred prosecution agreement with Woods; but, at the November 2022 jury status hearing, he admitted to communication problems with Woods. Woods stated he never had a meeting with Solis to discuss the agreement. The court never discussed the agreement again. The State further told the court that the *Ludwig* hearing had been completed at the April 2022 hearing, and Solis did not contradict this statement. On the trial date of November 29, 2022, the deferred prosecution offer was not placed

9

on the record. The Record does not reflect whether Woods had an opportunity to accept it.

¶18 Under these facts, "[a ***Machner***] hearing is important not only to give trial counsel a chance to explain his or her actions, but also to allow the trial court, which is in the best position to judge counsel's performance, to rule on the motion." ***State v. Curtis***, 218 Wis. 2d 550, 554, 582 N.W.2d 409 (Ct. App. 1998).

¶19 The importance of a ***Machner*** hearing under the facts alleged by Woods is underscored by the stark difference in penalties facing Woods between taking the deferred prosecution agreement or pleading guilty to all counts at trial. The Record shows that despite Woods's assertion that he did not want to plead guilty to stalking, he entered a guilty plea to those counts and the other counts against him, which resulted in maximum penalties totaling ten years of initial confinement followed by ten years of extended supervision, and a consecutive four years of probation. If Woods had taken and successfully completed the deferred prosecution agreement, he would have faced only probation. Whether Woods was prejudiced, therefore, is also at issue on remand. A ***Machner*** hearing is imperative to resolve whether Woods's counsel's performance was deficient. We reverse the order denying postconviction relief and remand the cause for a ***Machner*** hearing.

*By the Court.*—Order reversed and cause remanded for further proceedings.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

10