# IN THE SUPREME COURT OF IOWA

No. 16–1619

Filed May 25, 2018

**GUILLERMO HERNANDEZ RUIZ,**

Appellee,

vs.

**STATE OF IOWA,**

Appellant.

---

Appeal from the Iowa District Court for Polk County, Lawrence P. McLellan, Judge.

The State appeals the district court's grant of postconviction relief based on a finding of ineffective assistance of counsel. **DISTRICT COURT JUDGMENT REVERSED AND CASE REMANDED.**

Thomas J. Miller, Attorney General, Thomas J. Ogden, Assistant Attorney General, John P. Sarcone, County Attorney, and Kevin Hathaway, Assistant County Attorney, for appellant.

Margaret A. Hanson and Nichole Miras Mordini of Davis, Brown, Koehn, Shors & Roberts, P.C., Des Moines, for appellee.

**MANSFIELD, Justice.**

This case presents the question whether bad advice from an immigration attorney to a client to try to get a driver's license, which triggered a criminal investigation and ultimately a conviction of the client for a previously committed fraudulent practice, can be grounds under the Sixth Amendment or article I, section 10 for setting aside that conviction. As discussed herein, we conclude that no right to counsel had attached when the client went to the driver's license station. This was before any investigation or criminal proceedings had begun. Accordingly, we reverse the district court ruling that granted postconviction relief to the client and remand for further proceedings consistent with this opinion.

### I. Facts and Proceedings.

Guillermo Hernandez Ruiz is a native and citizen of Mexico. He entered the United States without permission in November of 1999. After entering the United States, Hernandez Ruiz obtained vehicle titles in his name using a false social security number that did not belong to him.

On November 3, 2010, the Department of Homeland Security initiated removal proceedings against Hernandez Ruiz based on section 212(a)(6)(A)(i) of the Immigration and Nationality Act. *See* 8 U.S.C. § 1182(a)(6)(A)(i) (2006 & Supp. III 2009).[1] Hernandez Ruiz hired attorney Michael Said to represent him in the removal proceedings.

---

[1]This subsection provides as follows:

**(a) Classes of aliens ineligible for visas or admission**

Except as otherwise provided in this chapter, aliens who are inadmissible under the following paragraphs are ineligible to receive visas and ineligible to be admitted to the United States:

. . . .

**(6) Illegal entrants and immigration violators**

**(A) Aliens present without admission or parole**

On February 28, 2011, Said filed an application for cancellation of removal with the United States Citizenship and Immigration Service (CIS) on Hernandez Ruiz's behalf, indicating that Hernandez Ruiz had children who were American citizens who would suffer hardship if he were deported. *See id.* § 1229b(b)(1).[2] CIS received the application on March 1. As a result, Hernandez Ruiz was able to obtain an Employment Authorization Document (EAD) and valid social security number.

That day, Hernandez Ruiz went to the Ankeny driver's license station of the Iowa Department of Transportation (DOT) and attempted to use his

---

> **(i) In general**
>
> An alien present in the United States without being admitted or paroled, or who arrives in the United States at any time or place other than as designated by the Attorney General, is inadmissible.

8 U.S.C. § 1182(a)(6)(A)(i).

[2]This subsection provides as follows:

> **(b) Cancellation of removal and adjustment of status for certain nonpermanent residents**
>
> **(1) In general**
>
> The Attorney General may cancel removal of, and adjust to the status of an alien lawfully admitted for permanent residence, an alien who is inadmissible or deportable from the United States if the alien—
>
> (A) has been physically present in the United States for a continuous period of not less than 10 years immediately preceding the date of such application;
>
> (B) has been a person of good moral character during such period;
>
> (C) has not been convicted of an offense under section 1182(a)(2) [includes conviction of a crime of moral turpitude], 1227(a)(2) [includes conviction of a crime of moral turpitude], or 1227(a)(3) [failure to register and falsification of documents] of this title, subject to paragraph (5); and
>
> (D) establishes that removal would result in exceptional and extremely unusual hardship to the alien's spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence.

8 U.S.C. § 1229b(b)(1).

EAD and social security number to get a driver's license. Before doing so, Hernandez Ruiz met with Said at Said's law office. At that time, Said explained that the EAD and the social security number enabled Hernandez Ruiz to obtain a driver's license and if he wanted to drive, he had to have a license. Said did not inquire if Hernandez Ruiz had previously registered vehicles with a fraudulent social security number or advise of the risk that the DOT would discover prior fraudulent titling even though he was aware of this risk. Additionally, Said did not inform Hernandez Ruiz that he did not need a license if he wasn't going to be driving. In fact, Said testified he likely instructed Hernandez Ruiz to get a license.[3]

When Hernandez Ruiz presented his documentation at the Ankeny driver's license station, a clerk ran it through the system and found that vehicles had been titled under the same name and date of birth but with a different social security number. Hernandez Ruiz admitted to the clerk that he had previously titled and registered vehicles under a different social security number. The clerk copied Hernandez Ruiz's documents and tried to get hold of a DOT investigator but was unable to do so at that time. She sent Hernandez Ruiz away without a driver's license and turned over the materials to an investigator a few minutes later.

Meanwhile, Hernandez Ruiz spoke to Said about what had happened. Said advised him that he had three options: (1) go back to the DOT by himself and risk being charged with a felony; (2) have Said contact a DOT investigator and then return to the DOT with Said, where he would be charged with an aggravated misdemeanor (which would be pled down to a serious misdemeanor); or (3) consult with another attorney. Said did

---

[3]Hernandez Ruiz had been cited several times in 2009 and 2010 for driving without a license. In October 2010, he had been convicted of driving while under suspension or revocation. Since then, according to his testimony, he had been getting rides and not driving himself.

not advise Hernandez Ruiz that he was not obligated to return to the DOT or obtain a driver's license. Hernandez Ruiz elected to have Said contact DOT Investigator Don Sharr and set up a time for the three of them to meet. On March 2, Hernandez Ruiz completed a fee contract with Said for this representation.

On March 9, Hernandez Ruiz and Said met with Investigator Sharr at the DOT. During the meeting, Hernandez Ruiz signed a voluntary statement admitting several instances of registering cars under a false social security number. Because of Hernandez Ruiz's candor, Sharr decided to charge Hernandez Ruiz with one count of fraudulent practices in the third degree in violation of Iowa Code section 714.11, an aggravated misdemeanor. *See* Iowa Code § 714.11 (2011). Said represented Hernandez Ruiz in his criminal case. On June 1, 2012, Hernandez Ruiz pled guilty to the lesser included offense of fraudulent practices in the fourth degree, a serious misdemeanor. *See id.* § 714.12. Hernandez Ruiz received a 180-day sentence, which was suspended, and was required to perform fifty hours of community service.

As a result of this conviction, on September 6, 2013, the Department of Homeland Security filed a motion to pretermit Hernandez Ruiz's application for cancellation of removal, urging that fraudulent practices in the fourth degree was a crime involving moral turpitude rendering Hernandez Ruiz ineligible for relief. *See* 8 U.S.C. § 1229b(b)(1). The immigration court agreed. Consequently, Hernandez Ruiz once again faced deportation.

Hernandez Ruiz retained new counsel and filed an application for postconviction relief on May 29, 2015, alleging he had received ineffective assistance of counsel from Said. The case went to trial on May 31, 2016.

On August 29, the district court granted Hernandez Ruiz's application and vacated and set aside his guilty plea and sentence. The court found that

> Said breached his essential duty to inform [Hernandez] Ruiz that he did not need to obtain a driver's license and explain to him that he could be charged with a crime knowing that the DOT was investigating matters of this sort and that the charge could have an adverse impact on his immigration status. His failure to provide this advice placed [Hernandez] Ruiz into a situation resulting in the initiation of criminal proceedings.[4]

The court also rejected the State's argument that the right to counsel had not attached. The State appealed, and we retained the appeal.

## II. Standard of Review.

Our review of postconviction-relief proceedings is typically for correction of errors at law. *Diaz v. State,* 896 N.W.2d 723, 727 (Iowa 2017); *see* Iowa R. App. P. 6.907. But when we are reviewing an ineffective-assistance-of-counsel claim, we do so de novo because such claims are constitutional in nature. *Diaz,* 896 N.W.2d at 727; *Millam v. State,* 745 N.W.2d 719, 721 (Iowa 2008).

## III. Analysis.

The State seeks reversal of the district court's ruling on the ground that no constitutional right to counsel had attached at the time of Said's alleged ineffective assistance. *See State v. Dudley,* 766 N.W.2d 606, 617 (Iowa 2009) ("Without a right to counsel, [a defendant] also has no commensurate right to effective assistance from that counsel." (Alteration in original.) (quoting *White v. Schotten,* 201 F.3d 743, 752 (6th Cir. 2000), *overruled on other grounds by Lopez v. Wilson,* 426 F.3d 339, 341 (6th Cir. 2005) (en banc))); *see also Wainwright v. Torna,* 455 U.S. 586, 587–88, 102 S. Ct. 1300, 1301 (1982) (per curiam) ("Since respondent had no

---

[4]The district court found a breach of essential duty only with respect to Hernandez Ruiz's first trip to the DOT on March 1, not his second.

constitutional right to counsel, he could not be deprived of the effective assistance of counsel by his retained counsel's failure to file the application timely."). Hernandez Ruiz does not dispute that a right of counsel must have attached in order for his claim to succeed.

**A. The Sixth Amendment Right to Counsel.** The Sixth Amendment provides, "In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. The Supreme Court has held the right "does not attach until a prosecution is commenced." *Rothgery v. Gillespie County*, 554 U.S. 191, 198, 128 S. Ct. 2578, 2583 (2008) (quoting *McNeil v. Wisconsin*, 501 U.S. 171, 175, 111 S. Ct. 2204, 2207 (1991)). A prosecution commences at "the initiation of adversary judicial criminal proceedings." *Id.* (quoting *United States v. Gouveia*, 467 U.S. 180, 188, 104 S. Ct. 2292, 2297 (1984)). This could be "by way of formal charge, preliminary hearing, indictment, information, or arraignment." *Id.* (quoting *Gouveia*, 467 U.S. at 188, 104 S. Ct. at 2297).

> The rule is not "mere formalism," but a recognition of the point at which "the government has committed itself to prosecute," "the adverse positions of government and defendant have solidified," and the accused "finds himself faced with the prosecutorial forces of organized society, and immersed in the intricacies of substantive and procedural criminal law."

*Id.* (quoting *Kirby v. Illinois*, 406 U.S. 682, 689, 92 S. Ct. 1877, 1882 (1972) (plurality opinion)). It is immaterial to this analysis whether the prosecutor is aware of the initial proceeding or involved in its conduct. *Id.* at 194–95, 128 S. Ct. at 2581. The Court and the vast majority of states have determined

> a criminal defendant's initial appearance before a judicial officer, where he learns the charge against him and his liberty is subject to restriction, marks the start of adversary judicial

proceedings that trigger attachment of the Sixth Amendment right to counsel.

*Id.* at 213, 128 S. Ct. at 2592; *accord id.* at 203–04 & n.14, 128 S. Ct. at 2586–87 & n.14 (citing cases and statutes from forty-three states that "take the first step toward appointing counsel 'before, at, or just after initial appearance'" (citation omitted)).

At the time of Hernandez Ruiz's counsel's alleged breach, no prosecution had commenced because no "adversary judicial criminal proceedings" had been initiated. *See id.* at 198, 128 S. Ct. at 2583 (quoting *Gouveia*, 467 U.S. at 188, 104 S. Ct. at 2297). Hernandez Ruiz had not been brought before a judicial officer for arraignment. *See* Iowa R. Crim. P. 2.8 (Iowa uses arraignments instead of initial appearances.). No charges had been filed; no criminal investigation had even begun. The core of Hernandez Ruiz's argument, in fact, is that Said's bad advice to go get a driver's license *triggered* a criminal investigation.

The district court relied on a federal district court case, *United States v. Bowers*, 517 F. Supp. 666 (W.D. Pa. 1981), in finding that a Sixth Amendment right attached here. In *Bowers*, before the defendant had been charged, the government informed the defendant's counsel that the defendant would be granted "informal immunity from prosecution in return for her cooperation with the government." *Id.* at 669. After counsel failed to respond to the government's offer on two occasions, the defendant was indicted by a grand jury. *Id.* The court concluded "[i]f counsel fails to inform his client of a pending proposal, prior to adversary criminal proceedings, and the client is prejudiced, fairness and due process dictate relief." *Id.* at 671. Because counsel's failure turned the case into one "of substantial and continuing prejudice to a defendant who would not otherwise have been indicted," the court concluded the appropriate

remedy under the Sixth Amendment was dismissing the indictment. *Id.* at 672.

*Bowers*, however, does not persuade us. First, *Bowers* predates relevant Supreme Court precedents such as *Gouveia* and *Rothgery*. *Bowers* is a federal district court opinion and does not explicitly analyze attachment of the Sixth Amendment right to counsel, whereas *Gouveia* and *Rothgery* are Supreme Court opinions squarely addressing the right-to-counsel attachment issue. *See State v. Green*, 896 N.W.2d 770, 776 (Iowa 2017) (applying *Rothgery* and noting no Sixth Amendment right to counsel had attached because the interview at issue occurred before any of the formal events listed in *Rothgery*).

Second, in *Bowers* the government had already marshalled its forces and was ready and going to prosecute if the defendant did not accept its immunity offer, whereas here, the government had yet to begin any sort of criminal investigation when Hernandez Ruiz's counsel allegedly breached a duty. *See* 517 F. Supp. at 669.

For these reasons, we find that no Sixth Amendment right to counsel had attached at the time Said advised Hernandez Ruiz regarding getting a driver's license on March 1, 2011.

**B. The Article I, Section 10 Right to Counsel.** The next question is whether a right to counsel under article I, section 10 had attached.

We first must decide, however, whether article I, section 10 is properly before us. Hernandez Ruiz did not mention it in the district court proceedings. In his postconviction-relief application, Hernandez Ruiz did put an "X" in the box that stated, "The conviction or sentence was in violation of the Constitution of the United States or the Constitution or laws of this state." He argued that he had received ineffective assistance

of counsel. The district court cited both the Sixth Amendment and article I, section 10 in its ruling, although its analysis did not distinguish the two.

Under existing precedent, these actions are sufficient to preserve both claims. *See State v. Coleman*, 890 N.W.2d 284, 286 (Iowa 2017) ("We have said that when a party brings a constitutional claim but fails to identify whether the party is proceeding under the Iowa or the Federal Constitution, claims under both the Iowa and the Federal Constitutions are preserved."). Moreover, the State's opening brief on appeal treats both federal and state constitutional grounds as having been preserved. In its opening brief, the State discusses the right to counsel under article I, section 10 as well as under the Sixth Amendment.

Nonetheless, Hernandez Ruiz's answering brief refers only to the Sixth Amendment. The two argument headings are explicit about this:

**A. Relevant case law, as well as secondary sources, demand a much less rigid interpretation of attachment of the Sixth Amendment right to counsel.**

**B. Public policy favors an expansion of the Sixth Amendment right to counsel, given the devastating immigration consequences that counsel's advice will have for Hernandez Ruiz.**

This raises the possibility that any article I, section 10 claim, although preserved in the district court, has been waived on appeal. The doctrine of waiver applies to issues not asserted on appeal whereas the doctrine of error preservation applies to issues not asserted or decided in the district court. *See, e.g., State v. Childs*, 898 N.W.2d 177, 190 & n.8 (Iowa 2017) (Hecht, J., dissenting) ("A party does not preserve error on issues not asserted or decided in the district court but waives an argument not asserted on appeal.").

However, since Hernandez Ruiz is the appellee and article I, section 10 was preserved below, we have discretion to address it and will proceed

to do so. "We have discretion to affirm the district court on grounds raised at trial but not on appeal." *State v. Morris*, 858 N.W.2d 11, 17 (Iowa 2015); *accord King v. State*, 818 N.W.2d 1, 11 (Iowa 2012). And because the State discussed article I, section 10 in its own brief, there is no unfairness to the State.

Article I, section 10 of the Iowa Constitution provides, "In all criminal prosecutions, and in cases involving the life, or liberty of an individual the accused shall have a right . . . to have the assistance of counsel." Iowa Const. art. I, § 10. The language of the provision indicates the person claiming the right to counsel must be an "accused" in either a criminal prosecution or a case involving that person's life or liberty.

Recently, in *Green*, we applied article I, section 10 to hold that a defendant did not have a right to counsel during a noncustodial, investigative interview that occurred before the defendant had been arrested or charges had been filed, even though a prosecutor supervised the interview. 896 N.W.2d at 782. We noted, "There was no prosecution or case at the time of Green's interview." *Id.* We added, "Green was not formally or informally an 'accused.' " *Id.* at 778.

In the present case, the right to counsel would have to arise even earlier than in *Green*. Hernandez Ruiz was not yet under investigation when he went to the Ankeny driver's license station on March 1, 2011. He was just trying to get a driver's license. Only after he provided his social security number, which differed from at least one number he had used in the past, did an investigation ensue. The investigation then led to a criminal charge. In light of *Green* and the text of article I, section 10, we are unable to conclude that a right to counsel had attached.

**C. The Immigration Proceeding.** It is true that Hernandez Ruiz had a pending *federal immigration case* in which Said was representing

him. Yet the article I, section 10 right to counsel does not apply in federal immigration cases. "Stated simply, state constitutions do not control federal action." *State v. Mollica*, 554 A.2d 1315, 1327 (N.J. 1989); *see United States v. Bach*, 310 F.3d 1063, 1066 (8th Cir. 2002) ("[F]ederal courts in a federal prosecution do not suppress evidence that is seized by state officers in violation of state law, so long as the search complied with the Fourth Amendment."); *United States v. Smith*, 9 F.3d 1007, 1014 (2d Cir. 1993) (holding the validity of search in a federal prosecution depends on whether the Federal, not State, Constitution is satisfied); *State v. Hernandez-Galarza*, 864 N.W.2d 122, 135 (Iowa 2015) (noting the State of Iowa would not have the ability to discharge an individual confined by federal authorities under the federal immigration laws).[5]

---

[5]The "cases" language of article I, section 10 was added in reaction against the Fugitive Slave Act as amended by Congress in 1850. *In re Johnson*, 257 N.W.2d 47, 54 (Iowa 1977) (McCormick, J., concurring specially) (explaining why article I, section 10 did not confer a right to jury trial in delinquency cases). The Federal Fugitive Slave Act of 1850 empowered federal commissioners to return fugitive slaves from free states to slave states without the benefit of jury trial. Act of Sept. 18, 1850, ch. 60, § 6, 9 Stat. 462, 463–64 (repealed 1864). "No one can doubt from the convention record that the disputed language was added to Art. I § 10 in an effort to nullify the Fugitive Slave Act by giving persons accused as escaped slaves the right to jury trial in Iowa." *In re Johnson*, 257 N.W.2d at 54.

During the debates over the Iowa Constitution, doubts were expressed about the constitutionality of using an Iowa constitutional provision to override the Fugitive Slave Act. *See* 2 *The Debates of the Constitutional Convention of the State of Iowa* 736–37, 740–41 (W. Blair Lord rep. 1857), publications.iowa.gov/7313/2/The_Debates_of_the_Constitutional_Convention_Vol%232.pdf. For example,

> I would be unwilling to put into this constitution what gentlemen have openly avowed is the meaning of this provision; and if these words are not stricken out, this will be the condition of things: that if Congress pass a law upon the subject of the rendition of fugitive slaves, and if that law shall be resisted by a counter law of this State, we shall have assumed to take that subject from the authority of the laws of the United States, to decide upon it for ourselves. That cannot be done without bringing about a collision between these authorities.

*Id.* at 741.

Additionally, federal law does not recognize a Sixth Amendment right to counsel in immigration cases. "In an immigration removal proceeding, an alien does not have a Sixth Amendment right to counsel, only a privilege." *United States v. Telemaque*, 632 F. App'x 602, 603–04 (11th Cir. 2016) (per curiam); *see Estrada-Hernandez v. Lynch*, 819 F.3d 324, 327 (7th Cir. 2016) (per curiam) (stating that the Sixth Amendment right to counsel "does not apply to removal proceedings, which are regarded as civil in nature"); *Brumant v. Holder*, 594 F. App'x 273, 274 (5th Cir. 2015) (per curiam) ("[W]e note our longstanding authority that aliens in immigration proceedings have no Sixth Amendment right to counsel."); *Debeatham v. Holder*, 602 F.3d 481, 485 (2d Cir. 2010) (per curiam) ("Because immigration proceedings are of a civil rather than criminal nature, aliens in removal proceedings 'enjoy[ ] no specific right to counsel' under the Sixth Amendment to the Constitution." (Alteration in original.) (quoting *Jian Yun Zheng v. U.S. Dep't of Justice*, 409 F.3d 43, 46 (2d Cir. 2005))); *Kawas v. Att'y Gen. of U.S.*, 304 F. App'x 84, 88 (3d Cir. 2008) (per curiam) ("[T]he Sixth Amendment right to counsel does not attach in immigration proceedings.").

**D. Practical Considerations.** Furthermore, the right to counsel urged by Hernandez Ruiz presents many practical difficulties. Would the DOT need to make attorneys available at driver's license offices for private consultations before people applied for licenses? Also, because of the danger that setting off a criminal investigation could result in removal from

A supporter of the language responded to this argument in the following manner: "[I]f the provision under consideration should come in conflict with the fugitive slave law, I do not care." *Id.* at 738.

Yet the fact that the "cases" language in article I, section 10 was originally an effort to nullify certain federal proceedings does not mean we can use it today to dictate the rights that would be conferred in a different kind of federal proceeding. The Supremacy Clause applies. *See* U.S. Const. art. VI, cl. 2.

the United States, aliens would potentially have a constitutional right to counsel in a number of circumstances when citizens would *not* have such a right. Those circumstances wouldn't be limited to driver's licenses.

Bad legal advice can lead to a criminal investigation in a variety of contexts. There are many ways in which a misstep can unwittingly set the authorities on one's trail. Still, it isn't ineffective assistance unless the bad advice occurs in a criminal case or an Iowa case "involving the life, or liberty of an individual."

We also should consider the remedy that Hernandez Ruiz seeks in this case. Normally, the remedy for ineffective assistance is tailored to the constitutional violation. *See, e.g., State v. Allen*, 708 N.W.2d 361, 369 (Iowa 2006) (finding that the proper remedy for ineffective assistance in connection with a guilty plea resulting from a plea bargain is to invalidate the entire plea bargain and allow both sides to start over); *State v. Iowa Dist. Ct.*, 464 N.W.2d 244, 250 (Iowa 1990) (en banc) (finding that the appropriate remedy for ineffective assistance at trial was a new trial rather than dismissal of the case); *see also United States v. Morrison*, 449 U.S. 361, 364, 101 S. Ct. 665, 667–68 (1981) ("Cases involving Sixth Amendment deprivations are subject to the general rule that remedies should be tailored to the injury suffered from the constitutional violation and should not unnecessarily infringe on competing interests."). That is, the defendant normally gets a do-over with the ineffective assistance removed. But here, Hernandez Ruiz would receive more—dismissal of charges for a crime he committed. For purposes of this appeal, we presume that effective counsel would have asked Hernandez Ruiz about any past involvement with the DOT and, based on his responses, advised him not to get a driver's license. Even so, Hernandez Ruiz might have been caught at some point for some other reason. Yet under the district court's

order, he could not be prosecuted for the use of a false social security number and would now be free to obtain a driver's license.

We are well aware of the severe consequences for aliens whose immigration status is affected by state criminal convictions. *See generally Diaz*, 896 N.W.2d 723. However, we cannot find that Hernandez Ruiz's conviction violated his constitutional right to counsel grounded in the Sixth Amendment or article I, section 10.

**IV. Conclusion.**

For the foregoing reasons, we reverse the order below and remand with directions to dismiss Hernandez Ruiz's application for postconviction relief.

**DISTRICT COURT JUDGMENT REVERSED AND CASE REMANDED.**

All justices concur except Appel, Hecht, and Wiggins, JJ., who concur specially.

**APPEL, Justice (specially concurring).**

I agree with the result in this case. The right to counsel did not attach under the Sixth Amendment or the more expansive version of right to counsel under article I, section 10 of the Iowa Constitution when Guillermo Hernandez Ruiz's lawyer gave him poor advice in his office. At that point, the adversarial power of the government had not focused on him at all. Indeed, no investigation of any kind was underway.

As indicated in my dissenting opinion in *State v. Senn*, I do not agree with a bright-line rule that invariably requires that the state file a piece of paper in a court in order for the right to counsel to attach. 882 N.W.2d 1, 56 (Iowa 2016) (Appel, J., dissenting). But the holding in this case is quite narrow and fact specific—when there is no investigation of any kind underway and a client receives legal advice in a law office as in this case, no right to counsel attaches and therefore no claim of ineffective assistance of counsel may be raised in a subsequent criminal proceeding based on the poor advice given by the lawyer. The opinion in this case extends no farther than this uncontroversial point of law.

Wiggins and Hecht, JJ., join this special concurrence.