# IN THE COURT OF APPEALS OF IOWA

No. 18-0686
Filed August 7, 2019

**LEON JUAN ZACARIAS,**
        Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
        Respondent-Appellee.
_____

        Appeal from the Iowa District Court for Muscatine County, Joel W. Barrows,

Judge.


        Leon Juan Zacarias appeals the dismissal of his application for

postconviction relief.  **AFFIRMED.**



        Dan Vondra of Vondra & Malott PLC, Iowa City, for appellant.

        Thomas J. Miller, Attorney General, and Genevieve Reinkoester, Assistant

Attorney General, for appellee State.



        Considered by Mullins, P.J., Bower, J., and Vogel, S.J.*

        *Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2019).

**BOWER, Judge.**

Leon Juan Zacarias appeals the district court's dismissal of his application for postconviction relief (PCR), which challenged his trial counsel's failure to advise him about immigration consequences of his guilty plea to identity theft and fraudulent practices. We affirm the district court.

### I.     Background Facts & Proceedings.

Zacarias has resided in the United States since 2006, had completed all the paperwork to adjust his status to a permanent resident, and is married to a United States citizen. On July 13, 2016, Zacarias was charged with identity theft, forgery, and two counts of fraudulent practices.

Zacarias hired attorney Michael Said to represent him due to Said's self-proclaimed expertise in criminal and immigration law.[1] On May 31, 2017, Zacarias filed a written guilty plea to two misdemeanors: identity theft and one count of fraudulent practice. The only mention of immigration on the memorandum of plea agreement is a handwritten provision at the bottom stating, "The defendant has been notified that any criminal charge or sentence can or will have immigration consequences." Zacarias and his interpreter both signed below the provision. On June 2, the court entered judgment and imposed a two-year suspended sentence and minimum fine on each count. The offenses related to Zacarias's use of another person's information to obtain employment and register a vehicle. Identity theft is considered a crime of moral turpitude, and a guilty plea results in clear

---

[1] Zacarias's previous immigration counsel, who worked from the same office as his PCR counsel, withdrew from representing Zacarias due to the pending criminal charges and gave Zacarias his file on July 15, 2016.

immigration consequences, including mandatory detention and expedited removal.[2]

On July 7, Immigration and Customs Enforcement (ICE) took Zacarias into custody when he went to sign his probation papers. On August 9, Zacarias filed a PCR application alleging ineffective assistance of counsel.

Following a hearing where the court heard testimony from both Zacarias and Said, the court dismissed Zacarias's application. The court expressly found Said to be a more credible witness. Zacarias filed a motion for new trial claiming mistake of fact as to whether Zacarias had an immigration attorney and that Said lied during his testimony. The district court denied the motion. Zacarias appeals.

## II.     Standard of Review

We review postconviction-relief proceedings for correction of errors at law. *Morales Diaz v. State*, 896 N.W.2d 723, 727 (Iowa 2017); *see also* Iowa R. App. P. 6.907. "But when we are reviewing an ineffective-assistance-of-counsel claim, we do so de novo because such claims are constitutional in nature." *Hernandez Ruiz v. State*, 912 N.W.2d 435, 439 (Iowa 2018). We give weight to the trial court's findings on the credibility of witnesses. *Ledezma v. State*, 626 N.W.2d 134, 141 (Iowa 2001).

---

[2] In *State v. Martinez*, 896 N.W.2d 737, 756 (Iowa 2017), released one week after Zacarias's sentencing and within the time to appeal, the Iowa Supreme Court found federal immigration law preempts the relevant identity-theft statutes for purposes of employment of unauthorized immigrants. The court ruled, "[T]he State in this case cannot prosecute Martinez for identity theft related to false documentation supplied to her employer as an unauthorized alien." *Martinez*, 896 N.W.2d at 756. Said did not inform Zacarias of the decision.

### III.    Analysis.

On appeal, Zacarias claims the district court erred in finding Said a credible witness despite evidence of prior attorney discipline relating to misrepresentations. Zacarias also claims Said provided ineffective assistance of counsel by misrepresenting the consequences of a guilty plea.

*Credibility determination.*   During cross examination, Zacarias's attorney was able to question Said about prior cases against him and disciplinary proceedings, including judicial findings of dishonesty.  The court was aware of, and expressly found Said more credible than Zacarias, based on the documentary evidence.  The court acknowledged the impeaching evidence and still found in Said's favor.  The district court was within its discretion in its credibility assessment. *See Tim O'Neill Chevrolet, Inc. v. Forristall*, 551 N.W.2d 611, 614 (Iowa 1996) ("The trier of fact—here, the district court—has the prerogative to determine which evidence is entitled to belief.  The district court has a better opportunity than we do to evaluate the credibility of witnesses." (internal citation omitted)).

*Ineffective assistance of counsel.*   Zacarias alleges two theories of ineffective assistance of counsel.   "Ineffective-assistance-of-counsel claims require a showing by a preponderance of the evidence both that counsel failed an essential duty and that the failure resulted in prejudice."  *State v. Schlitter*, 881 N.W.2d 380, 388 (Iowa 2016).  First, Zacarias claims Said failed to adequately explain the immigration consequences of his plea.  Second, Zacarias claims Said provided ineffective assistance by failing to advise of any potential benefits to trial.

Just over one week after Zacarias entered his plea and was sentenced, the Iowa Supreme Court explained attorneys are required to advise their clients of all

the collateral immigration consequences associated with pleading guilty.  *Morales Diaz*, 896 N.W.2d at 730.  In considering Zacarias's PCR application, the district court reasoned the extension constituted "a new rule of constitutional law that cannot be applied retroactively."  The court applied the standard from *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010), obligating counsel to provide advice on deportation consequences of a plea.

In June 2018, we expressly found, *"[Morales] Diaz* is not a change in law but rather an application of the existing law found in *Padilla*."  *Ramirez v. State*, No. 16-1893, 2018 WL 2727707, at *5 (Iowa Ct. App. June 6, 2018).  Therefore, *Morales Diaz* is the appropriate standard for evaluating Said's performance.

Under *Morales Diaz*, defense "counsel has an obligation to inform his or her client of all the adverse immigration consequences that competent counsel would uncover."  896 N.W.2d at 732.  These consequences can include "removal, exclusion, bars to relief from removal, immigration detention, denial of citizenship, and adverse consequences to the client's immediate family."  *Id.* at 732 (citation omitted).  Simply referring a client to alternative immigration counsel is not sufficient—counsel has a duty to explain statutory consequences "with reasonable clarity so a full and measured decision to plead guilty can be made."  *Id.*

Zacarias testified he was never told his criminal plea might result in detention by ICE.  He explained he would not have pleaded guilty because he did not want to be separated from family.  He testified Said "guaranteed that I was going to come out of my problem clean."

When discussing the information provided to Zacarias, Said testified,

> I specifically told him under the political climate that existed in June of 2017, the chances are high that you will be picked up and the chances are extremely high that you will be picked up. Under the new policies of this administration, ICE is empowered to arrest anybody for the smallest crime, and they do. And I warned him, I said I must tell you more than likely you will be arrested. Get ready for that.

He further testified to advising Zacarias he might be deported and, for a time, he would be ineligible to adjust his status and return. He then told Zacarias to go speak with his immigration attorney, but also admitted to knowing Zacarias was not able to consult with another attorney.

> I did advise him of the risk of pleading guilty prior to the plea. I explained to him what the risks were, which is way past what *Padilla* requires a criminal attorney to do, but I did, and I also told him to go talk to his immigration attorney to get a second opinion before pleading guilty. I fulfilled all the requirements of *Padilla*, and went way beyond *Padilla*. . . . I am doing everything possible to notify my clients of the consequences.

The State submitted an affidavit from Said, which includes the following statements,

> 3) I was aware that Mr. Zacarias was not a United States Citizen. From the beginning of his case we discussed the impact his criminal case would have on his current immigration status and eligibility for future relief. Specifically, Mr. Zacarias and I discussed on numerous occasions the fact that he could be removed from the United States, that the criminal case will hinder his ability to consulate process and adjust his status to that of lawful permanent resident, and could render him ineligible for cancellation of removal for certain non-permanent residents if he were placed in mandatory detention. In addition, I warned him that his plea would result in detention by [ICE] agents.
> . . . .
> 6) The prosecution offered a plea bargain to two misdemeanor offenses. I explained to Mr. Zacarias that these criminal convictions would require his removal from the United States and would result in great difficulties to ever legally come back to the United States. I then submitted a letter to Mr. Zacarias explaining our conversation . . . .

The State submitted as evidence an alternative written plea executed by Zacarias but not filed in his original case. On the same page as Zacarias's signature is a paragraph in bold, capital letters about immigration consequences,

> I understand that a criminal conviction, deferred judgment or deferred sentence may result in my deportation or have other adverse immigration consequences if I am not a United States citizen. I have had the opportunity to obtain legal advice about this matter and understand that it is my obligation to understand my immigration status before entering a guilty plea in this case.

Said did not provide Zacarias with any writing informing him of the immigration consequences of the plea. The letter from Said to Zacarias was not submitted to the court. However, Said testified about the letter after reviewing it to refresh his memory. This led to the following exchange:

> Q. Okay. And in this letter you didn't talk about any concrete immigration consequences, did you? A. I did not cite the code section, nor did I write down—I warned him, and I warned him on numerous occasions. I understand that you're complaining no matter what letter I write, you will be complaining.
> . . . .
> Q. Okay. And in fact, really the only thing you said about immigration consequences was, quote, "I explained the immigration ramifications of said plea, and that in the future, immigration laws could change for either the better or worse with regard to said plea." Does that sound familiar? A. You're quoting my letter, so I must say so, yes.
> Q. And previously—well, in the same letter you did say that if he went to trial, he would face jail time and deportation. Do you remember that? A. Potentially. The—my experience with trials in the State of Iowa with a Hispanic defendant is not the best, especially a defendant who has confessed. So that was what I explained to him at the meeting, which was before this letter.

The State also submitted an email from Zacarias's attorney to the State and a letter to Zacarias showing Zacarias went to his prior immigration counsel's office three times on June 1, 2017. Counsel, who works in the same office as Zacarias's PCR counsel, informed Zacarias she no longer represented him and referred him

back to Said. In other words, Zacarias attempted to consult with a second immigration attorney prior to the court accepting his plea and entering judgment. These attempted consultations appear to show that Zacarias was aware of potential immigration consequences

Based on the evidence in the record, we find support for the court's determination that Said's testimony—he advised Zacarias of the immigration consequences to the criminal charges—was more credible than Zacarias's claim he was guaranteed he would face no immigration problems. We find Zacarias did not establish by a preponderance of evidence Said breached a duty to him regarding immigration consequences to the plea.

Zacarias's second ineffective-assistance claim is that Said never explained to him the benefits of going to trial rather than entering a guilty plea. The State counters with an assertion Zacarias did not raise the issue below as a ground for relief and the court did not rule on it. The issue was not raised in Zacarias's PCR application, was not added in his motion to supplement the application, the court did not rule on the question, and it was not raised in Zacarias's motion for new trial. We agree the issue was not preserved. *See Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002).

We affirm the district court's dismissal of Zacarias's application for postconviction relief.

**AFFIRMED.**