# IN THE COURT OF APPEALS OF IOWA

No. 17-1904
Filed January 9, 2020

**DEMARRIO DESHON WRIGHT,**
Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
Respondent-Appellee.

_____


Appeal from the Iowa District Court for Black Hawk County, Andrea J. Dryer, Judge.


DeMarrio Wright appeals following the denial of his application for postconviction relief. **AFFIRMED.**


Richard Hollis, Des Moines, for appellant.

DeMarrio D. Wright, Fort Dodge, pro se appellant.

Thomas J. Miller, Attorney General, and Kyle Hanson, Assistant Attorney General, for appellee State.


Considered by Bower, C.J., and May and Greer, JJ.

**BOWER, Chief Judge.**

DeMarrio Wright appeals following the denial of his application for postconviction relief (PCR). We conclude Wright has failed to prove his claim of ineffective assistance of counsel. We affirm.

## I.    Background Facts & Proceedings

On August 15, 2011, a criminal complaint was filed accusing Wright of lascivious acts with a child. A trial information filed on October 31, and amended in July 2012, also charged Wright with sexual abuse in the third degree, sexual abuse in the second degree, and indecent contact with a child.[1] The minor victim alleged Wright perpetrated multiple incidents of indecent contact and sex abuse between 2005 and November 2010 in both Iowa and Mississippi.

In October 2012, a jury found Wright guilty of sexual abuse in the second and third degree and indecent contact with a child.[2] We upheld his conviction on direct appeal. *State v. Wright*, No. 12-2138, 2014 WL 956064, at *7 (Iowa Ct. App. Mar. 12, 2014). Wright's direct appeal challenged the admission of testimony regarding a subsequent sex-abuse incident in Mississippi and alleged a speedy-indictment violation. *See id.* at *3, *5. The supreme court denied further review.

On June 23, 2014, Wright filed a PCR application. In a recast application, Wright alleged multiple ways his counsel provided ineffective assistance at trial. Following the PCR trial, at which Wright and his trial counsel testified, the district court dismissed the application.

---

[1] The original charge of lascivious acts with a child was dismissed by the court as violating the speedy-indictment rule.
[2] This was the second trial for Wright because the judge declared a mistrial during the first trial.

Wright appeals, claiming his counsel provided ineffective assistance.

## II.     Standard of Review

"Our review of postconviction-relief proceedings is typically for correction of errors at law.  But when . . . reviewing an ineffective-assistance-of-counsel claim, we do so de novo because such claims are constitutional in nature."  *Ruiz v. State*, 912 N.W.2d 435, 439 (Iowa 2018) (internal citations omitted).

> To succeed on [an] ineffective-assistance-of-counsel claim, [Wright] must prove (1) counsel failed to perform an essential duty and (2) prejudice resulted.  To establish the first prong, [Wright] must show his counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." We approach the first prong with the presumption counsel performed their duties competently; "we measure counsel's performance against the standard of a reasonably competent practitioner." Although not required to predict changes in the law, "counsel must 'exercise reasonable diligence in deciding whether an issue is "worth raising."'"  Counsel is not burdened with the duty to raise an issue that has no merit.  The second prong—prejudice—results when "there is a reasonable probability that, but for the counsel's unprofessional errors, the result of the proceeding would have been different."

*State v. Brown*, 930 N.W.2d 840, 855 (Iowa 2019) (citations omitted).

"The claimant must prove both elements by a preponderance of the evidence."  *State v. Madsen*, 813 N.W.2d 714, 724 (Iowa 2012).  An applicant's failure to prove either element by a preponderance of the evidence is fatal to a claim of ineffective assistance.  *State v. Polly*, 657 N.W.2d 462, 465 (Iowa 2003). "[I]mprovident trial strategy, miscalculated tactics, and mistakes in judgment do not necessarily amount to ineffective assistance of counsel."  *State v. Ondayog*, 722 N.W.2d 778, 786 (Iowa 2006) (citation omitted).  "[W]e will not reverse where counsel has made a reasonable decision concerning trial tactics and strategy, even if such judgments ultimately fail."  *Id.* (citation omitted).

### III. Analysis

**A. Ineffective assistance of counsel.** On appeal, Wright raises three issues of counsel's failure to investigate. First, counsel failed to investigate and present cell-phone-location-data evidence showing Wright's location during the Mississippi allegation. Second, counsel did not call Wright's sisters and an ex-paramour as witnesses. Finally, counsel failed to investigate potential DNA evidence and present expert testimony. On appeal, Wright claims counsel's alleged failures rose to the level of structural error, allowing prejudice to be presumed. *See Lado v. State*, 804 N.W.2d 248, 252 (Iowa 2011) (noting structural error renders the underlying trial so unreliable as to entitle the defendant to a new proceeding without showing actual prejudice).

At the outset, we address the structural-error claim.

> We have recognized structural error occurs when: (1) counsel is completely denied, actually or constructively, at a crucial stage of the proceeding; (2) where counsel does not place the prosecution's case against meaningful adversarial testing; or (3) where surrounding circumstances justify a presumption of ineffectiveness, such as where counsel has an actual conflict of interest in jointly representing multiple defendants.

*Id.* The types of error Wright alleges here are those addressed under our general ineffective-assistance standard; they do not rise to a level "where, under the circumstances, the likelihood of counsel rendering effective assistance is too remote." *See Krogmann v. State*, 914 N.W.2d 293, 313 (Iowa 2018).

*Cell phone location data.* Wright's first claim of ineffective assistance is that counsel did not obtain records from his cell phone provider showing his location the night of the Mississippi incident. He argues the location information would have disproved the Mississippi allegation and led the jury to doubt the victim's testimony.

Counsel obtained records of Wright's cell phone calls on the relevant dates. He did not request location data from where Wright's calls were made or received. It is not clear the call location data would have been available at the time the records were obtained, and Wright has not provided any evidence the information was available from his service provider. Moreover, Wright has not produced any evidence indicating the location data would place him away from the crime scene on the night in question.[3] Counsel determined calling a person from the cell phone company as a witness would not provide a benefit to Wright and made a strategic decision not to do so based on the information in his possession. While this strategy may have failed, it does "not clearly appear to have been misguided." *See Ondayog*, 722 N.W.2d at 786.

*Impeachment witnesses.* Wright claims counsel should have called his sisters and ex-paramour to testify to discredit testimony by two of the State's witnesses.[4] First, Wright claims his sisters should have been called to discredit statements made by the victim's aunt to police during the investigation. But, the statements to be discredited were not testified to or part of the record before the jury. Wright claims the impeachment of the unrelated statements would have made the jury question the aunt's credibility regarding the victim's report of the abuse to her.

"Except for a criminal conviction under [Iowa Rule of Evidence] 5.609, extrinsic evidence is not admissible to prove specific instances of a witness's

---

[3] Testimony at his trial indicated Wright had spoken with the victim's mother on his own mother's telephone after the incident that night.

[4] Neither Wright nor the State provide any legal authority on the admissibility of the witnesses' testimony or counsel's duty to put them on the stand.

conduct in order to attack or support the witness's character for truthfulness." Iowa R. Evid. 5.608(b).  The impeachment testimony as described by Wright therefore would not have been admissible, and he has not identified how the testimony otherwise would have been admissible.  Counsel has no duty to raise an issue that has no merit.  *Brown*, 930 N.W.2d at 855.  Counsel did not err in not having Wright's sisters testify as impeachment witnesses.

Wright also claims his former paramour should have been called to describe what she saw of his interactions with the victim to counter a statement made by the investigator regarding an allegation that may have occurred in Des Moines. Wright admitted he did not know if counsel or his investigator spoke with his paramour during the investigation.  He did not present an affidavit or testimony from his paramour describing how she would have testified if called.  Having reviewed the trial transcript, the investigator—whom Wright claims his paramour might have contradicted—did not allude to any allegations occurring in Des Moines.  Counsel does not perform incompetently in failing to rebut testimony that was not given.

*DNA evidence.*  Wright claims his counsel should have obtained the victim's clothing and bedding from the trip to Mississippi and test it for DNA.  The initial report of the Mississippi incident, made to the Iowa Department of Human Services, did not occur until February 2012—three months after the family returned from Mississippi.  The investigation prompted by the report revealed earlier incidents of abuse, which had occurred in Iowa and led to a criminal complaint against Wright in August.  Counsel was not appointed for an additional two months after that.  Nothing in the record indicates the victim's clothing or bedding from

Mississippi were preserved or that the items were available for the type of DNA testing Wright speculates could exonerate him. Moreover, it is worth noting the evidence, if it existed, would have related to witness credibility and not the charges Wright faced—the charges all related to Iowa incidents of abuse.

Wright has not established by a preponderance of the evidence his counsel failed to perform an essential duty or committed an unprofessional error. This claim of ineffective assistance of counsel fails.

**B.    Pro Se Issues.** Wright also filed a pro se brief with additional claims of ineffective assistance of counsel.[5] First, Wright claims his counsel should have investigated and raised at trial the mother's history of sexual abuse as evidence of coaching the child. Wright's second claim is counsel failed to present evidence or testimony of the unreliability of non-doctors questioning children on their memories. Third, he challenges a failure to strike a juror based on language limitations. Wright also challenges the evidence of the Mississippi allegations. In his final claim, Wright states counsel should have objected to the State's closing argument, including "personal thoughts about the incident that occurred and [the prosecutor's] feelings towards those individuals that might undergo those kinds of offenses."[6]

---

[5] We note Iowa Code section 822.3B(1) was recently enacted and prohibits defendants from filing pro se briefs when represented by counsel. *See* 2019 Iowa Acts ch. 140, § 35. Our supreme court has not squarely addressed this change in law. However, the supreme court recently addressed similar language contained in another section of the same legislation. *See State v. Macke*, 933 N.W.2d 226, 227–28 (Iowa 2019). It concluded the change in law "appl[ies] only prospectively and do[es] not apply to cases pending on July 1, 2019." *Id.* at 235. We apply this reasoning to section 822.3B(1) and conclude it does not apply to this appeal, which was filed prior to July 1, 2019.

[6] Wright also raised the DNA-evidence issue, which we addressed above.

We agree with the district court's analysis on the first and third claims and conclude they were properly dismissed. Likewise, we dismiss his challenge to the admission of evidence relating to the Mississippi allegations because the issue was addressed on direct appeal. *See Wright*, 2014 WL 956064, at *5.

As to the unreliability of non-doctor forensic interviews, Wright's trial counsel did hire an expert to review the forensic interviews performed during the investigation. Counsel testified, "[I]t's my recollection that she did not see any significant problems that would benefit the case." We note the expert was unavailable to testify during the trial due to scheduling conflicts, and the court overruled a motion to continue after a hearing where the expert spoke by telephone. Wright has not presented any evidence the forensic interviews were not conducted properly or were otherwise unreliable. Moreover, the prosecution did not rely solely on the recorded forensic interviews—both the victim and the interviewer testified and were cross-examined before the jury, giving the jury ample opportunity to evaluate the witnesses' testimony. Counsel was not ineffective in failing to present expert testimony evaluating the interviews.

Finally, regarding the closing-arguments claim, the PCR court found Wright failed to identify the statements his counsel had a duty to object to, and the jury was presumed to have followed the instruction to base their verdict only on the evidence and not the prosecutor's statements, arguments, questions, and comments. Wright neither identifies the statements his counsel should have objected to, nor explained how an objection would have changed the outcome. *See Dunbar v. State*, 515 N.W.2d 12, 15 (Iowa 1994) ("The applicant must state the specific ways in which counsel's performance was inadequate and identify how

competent representation probably would have changed the outcome.").  Wright has not proved his claim of inadequate representation by a preponderance of evidence.  We affirm the dismissal of his PCR application.

**AFFIRMED.**