# IN THE COURT OF APPEALS OF IOWA

No. 20-1667
Filed December 15, 2021

**KEVIN JACOB MUEHLENTHALER,**
    Applicant-Appellee,

**vs.**

**STATE OF IOWA,**
    Respondent-Appellant.
_____

Appeal from the Iowa District Court for Story County, James C. Ellefson, Judge.

The State appeals the grant of a new trial to a postconviction-relief applicant found guilty of sexual exploitation by a school employee. **REVERSED AND REMANDED.**

Thomas J. Miller, Attorney General, and Thomas J. Ogden, Assistant Attorney General, for appellant State.

Joseph R. Cahill of Cahill Law Offices, Nevada, for appellee.

Heard by Vaitheswaran, P.J., and Tabor and May, JJ.

**TABOR, Judge.**

A jury convicted Kevin Muehlenthaler of three counts of sexual exploitation by a school employee. In postconviction-relief proceedings, the district court determined Muehlenthaler received ineffective assistance of counsel and ordered a new trial. Finding no prejudice from trial counsel's performance, we reverse and remand.

Muehlenthaler was a part-time band teacher at North Polk Elementary School when Kate,[1] a high school student, started volunteering in his class. Kate testified she liked spending time in Mr. Muehlenthaler's classroom because she was "really stressed out" her senior year and appreciated sharing her worries with an adult. But after a few months, the teacher became more than a sympathetic ear. He pursued an intimate relationship with Kate, leading to sexual intercourse at a motel. After that night at the motel, the sexual relationship continued for a few months. But it ended when Muehlenthaler told Kate that his wife decided she wanted to have children.

About a year after she graduated, Kate discovered Muehlenthaler had started a new position as a high school band teacher in Chariton. Concerned that Muehlenthaler would "be around teenage girls all the time," Kate reported their sexual relationship to one of her college professors. The professor tipped off Muehlenthaler's new school district.

---

[1] Because these events occurred when she was a minor, the student's name is confidential. For readability, we choose to assign a randomly-generated pseudonym rather than use initials. *See* Iowa Ct. R. 21.25; Random Word Generator, https://randomwordgenerator.com/name.php (last visited Dec. 3, 2021).

The day after receiving this tip, Chariton Superintendent Paula Wright met with Muehlenthaler. At the meeting, Muehlenthaler "didn't act surprised." He acknowledged the allegations and volunteered that Kate acted inappropriately around him, crossing boundaries that normally existed between students and educators. He claimed that he reported Kate's behavior to North Polk Principal Donna Spence and sought advice from fellow North Polk teacher Mary Schmiltz. Meanwhile, Kate reported Muehlenthaler's conduct to police. The State charged him with three counts of sexual exploitation by a school employee. And a jury convicted him as charged.

On direct appeal, Muehlenthaler raised evidentiary challenges and six claims of ineffective assistance of counsel. *See State v. Muehlenthaler*, No. 18-0159, 2019 WL 761635, at *3–10 (Iowa Ct. App. Feb. 20, 2019). We affirmed his convictions and preserved five of his ineffective-assistance claims for postconviction relief. *Id.* at *10.

In his postconviction-relief petition, Muehlenthaler reprised the five preserved claims and advanced four new ones. The district court granted relief, finding trial counsel was ineffective in two ways: (1) by not challenging racially insensitive comments credited to Muehlenthaler;[2] and (2) by not objecting when the prosecution introduced, by implication, unsworn, out-of-court statements.[3] *See*

---

[2] According to Kate's testimony, Muehlenthaler joked about his fifth-grade student's father being deported and mocked African Americans for eating fried chicken.

[3] During Chariton Superintendent Paula Wright's direct examination, the prosecutor asked about her communication with North Polk Principal Donna Spence. Defense counsel objected, arguing the statements were hearsay, and the district court agreed. So the prosecution tried again, asking a similar question but prefacing it with "without saying what anyone told you."

*State v. Huser*, 894 N.W.2d 472, 495–97 (Iowa 2017) (discussing "backdoor" hearsay).

The court decided these instances of ineffective assistance required a new trial. The State now appeals, claiming Muehlenthaler did not prove his first trial was constitutionally flawed.

To succeed on his claims, Muehlenthaler must show trial counsel "failed an essential duty and that the failure resulted in prejudice."[4] *State v. Schlitter*, 881 N.W.2d 380, 388 (Iowa 2016). Failure to prove either prong will preclude relief. *State v. McNeal*, 897 N.W.2d 697, 703 (Iowa 2017). Today we focus on prejudice.[5] To establish prejudice, Muehlenthaler must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 694 (1984). But that probability doesn't require a more-likely-than-not showing. *State v. Clay*, 824 N.W.2d 488, 496 (Iowa 2012) (citation omitted). Instead, a "reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

After considering the evidence, we find no reasonable probability of a different outcome based on the two alleged omissions in counsel's performance. The State's case against Muehlenthaler was strong. *See State v. Lorenzo Baltazar*, 935 N.W.2d 862, 872 (Iowa 2019) (finding no reasonable probability that

---

[4] We review postconviction-relief rulings for corrections of errors at law. *Ruiz v. State*, 912 N.W.2d 435, 439 (Iowa 2018). But we review ineffective-assistance claims de novo. *Id.*
[5] We assume, without deciding, that counsel performed deficiently.

result of trial would have been different given overwhelming evidence of guilt). Kate testified about her year-long relationship with this teacher. She testified that she "felt like he was treating her like an adult" when he would tell her sexual jokes and share details of his personal life. She also testified that he called her at strange hours and sent sexually charged text messages.

By January, Muehlenthaler's transgressions turned physical, grabbing her breasts and "spooning" with her. And just one month later, he booked a motel room for their first sexual encounter. According to Kate, over the next few months, they had sex several more times before the relationship ended. A detective testified that Kate was consistent throughout the conversations he had with her about these events.

But the jury had even more than Kate's word. The State offered corroboration. For example, the jury saw phone records logging many late-night calls between the student and teacher. And the State produced Kate's drawings that accurately depicted the locations where the sex acts occurred.

Even more telling, though, were two pieces of corroborating evidence that are difficult to explain away. First, Kate testified that when they were having sex she saw Muehlenthaler's insulin pump, which he wears on his buttocks under his clothes. Second, despite using another student's name as an alias, Muehlenthaler left clues to his own identity when registering at the motel. During check-in, he provided the motel clerk with his cell phone number and the address of an apartment that he rented years before meeting Kate. And neither Kate nor the student whose name Muehenthaler borrowed had any reason to know his former address. Given the strength of that corroboration, Kate's isolated reference to

Muehlenthaler's bigoted humor did not create the reasonable probability of a different outcome.

As for the backdoor hearsay, Muehlenthaler insists he was prejudiced by Paula Wright's testimony. As he sees it, her inadmissible testimony undermined his claims that he reported Kate to his principal and a fellow teacher. But the State offered what was, in essence, the same information through Dr. Daniel Mart. He testified that he knew nothing about Muehlenthaler reporting Kate's inappropriate comments. And if a teacher had reported a student making sexual advances, the district would have investigated and, as superintendent, he would have been notified. Because the disputed testimony was cumulative of other testimony, its admission does not undermine our confidence in the jury's verdicts. *See State v. Schaer*, 757 N.W.2d 630, 638 (Iowa 2008).

Given the strength of the State's case, trial counsel's assumed deficiencies did not result in prejudice. The postconviction court erred in granting relief.

**REVERSED AND REMANDED.**