# IN THE COURT OF APPEALS OF IOWA

No. 22-1978
Filed November 8, 2023

**KYLE JOHN ROBERTS,**
Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
Respondent-Appellee.

_____

Appeal from the Iowa District Court for Black Hawk County, Andrea J. Dryer, Judge.

An applicant appeals the denial of postconviction relief on his felony stalking charge. **AFFIRMED.**

Gregory F. Greiner, West Des Moines, for appellant.

Brenna Bird, Attorney General, and Louis S. Sloven, Assistant Attorney General, for appellee State.

Considered by Tabor, P.J., Buller, J., and Blane, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2023).

**TABOR, Presiding Judge.**

Ob·ses·sion (äb-ʻse-shən): a persistent disturbing preoccupation with an often unreasonable idea or feeling.[1]

That's how the prosecutor characterized Kyle Roberts's fixation on his alleged victims at the felony stalking trial. In fact, the prosecutor used the term "obsession" several times in closing argument. Roberts says his trial counsel was ineffective for not objecting. Robert also faults counsel for not offering evidence to support his defense. After reviewing the record, we find the prosecutor's references to Roberts's obsession were fair comments on the evidence, requiring no objection. And finding trial counsel performed with reasonable competence in representing Roberts, we affirm the denial of postconviction relief (PCR).

## I.     Facts and Prior Proceedings

In our decision affirming Roberts's conviction on direct appeal, we described his course of conduct:

> Roberts lived across the street from H.B. In 2010, Roberts initiated a Facebook request to be "friends" with H.B. She had never met him. Upon learning he was a neighbor living across the street, she declined his request. She was eighteen years old and a senior in high school at the time and was living with her parents. Roberts was older and lived alone. Over the next two years there were several contacts or incidents that eventually caused H.B. to obtain a no-contact order in November 2012.
>     . . . .
> The first incident . . . occurred at about 8:30 p.m. on April 14, 2013. Roberts positioned his pickup truck in his front yard so that it was facing directly at the house where H.B. and her family lived. Roberts had his truck running, headlights on high beam, and

---

[1]     *Obsession*, Merriam-Webster Dictionary Online, https://www.merriam-webster.com/dictionary/obsession (last visited Nov. 2, 2023).

hazard flashers on. Part of that time, Roberts was standing in his yard and for ten to fifteen minutes was "laying on the horn." H.B. and her family were home and frightened, believing Roberts might try to drive his truck into the front of their home. The family huddled in a back bedroom out of fear. . . .

The second incident occurred at Beck's, an establishment that had line dancing on Thursday evenings. H.B. routinely participated in the line dancing, dressing in western attire. One such evening in July 2014, Roberts appeared at Beck's. When H.B. saw him, she left. . . .

The third incident . . . occurred in 2014 but had its origins in an incident that occurred on June 14, 2012, after H.B. had returned home from school and was the only person home. She heard someone pounding hard on the front door, followed by someone jiggling the front door handle as if the person were trying to open it. The front door was locked, but H.B. called her grandmother and her dad and got a baseball bat for safety before the person at the door finally left. H.B. was able to identify the person as Roberts. That incident frightened H.B. and caused her to fear for her safety. So, in 2014, when H.B. saw Roberts standing in the front yard pantomiming knocking on a door and jiggling a handle, H.B. believed he was replaying the 2012 incident, intending to cause her fear.

*State v. Roberts*, No. 15-1164, 2016 WL 4801382, at *1−3 (Iowa Ct. App. Sept. 14, 2016).

H.B.'s mother testified at the criminal trial that she believed that Roberts had an "obsession" with her family, and that even if they considered moving, she didn't think it would stop. Echoing that testimony, in closing argument, the prosecutor asserted that Roberts's "obsession" with H.B. began after an encounter with her father in the neighborhood. The prosecutor ventured that when Roberts saw the young woman through the window of her house a few years later, "[t]his kind of fuel[ed] Kyle Roberts's obsession with [H.B.]." The prosecutor also argued that Roberts showing up at "country night at Beck's" was not a coincidence, "[t]hat's

part of his obsession." The prosecutor suggested that Roberts "started out with this obsession about [H.B.] Then branched out to her parents." In the defense closing, trial counsel Thomas McIntee countered the State's narrative. McIntee granted that Roberts was "socially awkward," "immature," and "misunderstood"—but insisted "he is not a stalker."

The jury convicted Roberts for stalking H.B. in violation of a protective order but acquitted him on counts of stalking H.B.'s father and mother. On direct appeal, we rejected his challenges to the sufficiency of the evidence and his prison sentence. *Roberts*, 2016 WL 4801382, at *3.

Roberts applied for PCR, alleging ineffective assistance of counsel. Both attorney McIntee and Roberts testified about the criminal case.[2] The PCR court found McIntee more credible and denied Roberts's requested relief. Roberts appeals that ruling.

## II. Analysis

Roberts claims he did not receive effective assistance of counsel because attorney McIntee did not object to the State's use of the term "obsession" and did not offer evidence "to demonstrate [Roberts's] innocent actions in and around his residence and in the community." The PCR court rejected those claims, finding McIntee engaged in a reasonable trial strategy. We review PCR rulings for the correction of legal error. *Ruiz v. State*, 912 N.W.2d 435, 439 (Iowa 2018). But when the applicant alleges ineffective assistance of counsel, we switch to de novo review. *Id.*

---

[2] Roberts also offered testimony from his sister, who lived with him in 2013. His intent was to show what she would have said if called to testify at his criminal trial.

To prevail on his claim of ineffective assistance, Roberts must prove attorney McIntee performed deficiently and prejudice resulted. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). On the performance prong, we ask whether McIntee acted within the normal range of competency, starting from the presumption that he did. *See State v. Cromer*, 765 N.W.2d 1, 7–8 (Iowa 2009). Roberts "must rebut the presumption of competence by showing a preponderance of the evidence that trial counsel's representation fell below an objective standard of reasonableness." *State v. Lorenzo Baltazar*, 935 N.W.2d 862, 868 (Iowa 2019) (cleaned up) (citation omitted). And "[i]n determining whether an attorney failed in performance of an essential duty, we avoid second-guessing reasonable trial strategy." *Everett v. State,* 789 N.W.2d 151, 158 (Iowa 2010).

On the prejudice prong, Roberts must show a reasonable probability exists that, but for counsel's omissions, "the result of the proceeding would have been different."*Strickland*, 466 U.S. at 694. In other words, was the likelihood that the omission impacted the trial great enough to "undermine confidence" in the outcome? *Id.* Failure to prove either prong will preclude relief. *State v. McNeal*, 897 N.W.2d 697, 703 (Iowa 2017).

We start and stop with the performance prong. Roberts first contends that attorney McIntee should have objected to the prosecutor's references to "obsession" in closing argument. He maintains that whether he was "obsessed" with his alleged victims "was not relevant to the elements of the offense." And the State's use of that word was "meant to unfairly inflame the passions of the jury."

McIntee's testimony at the PCR trial rebuts that contention. He believed that the prosecutor's "obsessions comments were just a fair comment on the

evidence." In his view, "that is kind of part and parcel with stalking." McIntee was right. In discussing Iowa's stalking statute, our supreme court recognized the role of obsessive behavior: "Undoubtedly, it was the intent of the legislature to prevent this type of long-term stalking that serves to frighten the victim and threatens to escalate as the stalker's obsession grows." *State v. Lindell*, 828 N.W.2d 1, 9 (Iowa 2013). What's more, "counsel is allowed some latitude" in closing arguments. *State v. Carey*, 709 N.W.2d 547, 554 (Iowa 2006). "Counsel may draw conclusions and argue permissible inferences which reasonably flow from the evidence presented." That is what the prosecutor did. McIntee had no cause to object. *State v. Lopez*, 872 N.W.2d 159, 169 (Iowa 2015) ("Counsel does not fail to perform an essential duty by failing to raise a meritless objection.").

And as McIntee pointed out at the PCR hearing, an objection would have been risky: "there's a double edge sword if you make an objection and the judge didn't grant your objection, then you really look bad with the jury." Like the PCR court, we do not find McIntee's strategic decision to remain silent in closing argument was ineffective. *See Ledezma v. State*, 626 N.W.2d 134, 143 (Iowa 2001) (noting strategic decisions made after "thorough investigation of law and facts relevant to plausible options are virtually unchallengeable" (citation omitted)).

Roberts next argues that attorney McIntee "should have also used exhibits and witnesses to help support the theory that his innocent (even though at times inappropriate) behaviors did not support the elements of stalking." Roberts does not flesh out this claim on appeal, failing to specify what exhibits or witnesses

would have supported his defense.[3]  As it stands, this claim is too vague for us to address.  *See Dunbar v. State*, 515 N.W.2d 12, 15 (Iowa 1994) (noting "it is not enough to simply claim that counsel should have done a better job" and requiring applicant to "state the specific ways in which counsel's performance was inadequate and identify how competent representation probably would have changed the outcome").

Because Roberts does not carry his burden to show McIntee breached a material duty in defending the stalking charge, we affirm the PCR ruling.

**AFFIRMED.**

---

[3] Granted, appellate counsel's efforts were hampered by the limited PCR record. Roberts represented himself at the PCR trial and did not identify how additional witnesses or exhibits would have changed the outcome of his criminal case.